MICHIGAN-ARKANSAS LUMBER COMPANY *v.* BULLINGTON.

Opinion delivered December 9, 1912.

1. MASTER AND SERVANT—DUTY TO WARN OF DANGER.—Where plaintiff in defendant's employ is suddenly called to perform a service, attached to which is a danger, which is not so obvious that a reasonably prudent man, suddenly called on to perform service there, would be apt to discover it and appreciate it, there is a duty in the employer to give warning to the servant. (Page 30.)

2. MASTER AND SERVANT—ASSUMED RISK—The matter of assumed risk is one of contract, and a servant is not held to have assumed the risk of a danger about which he knew nothing, and had no opportunity to inform himself. (Page 31.)

3. MASTER AND SERVANT—NEGLIGENCE—DUTY TO WARN.—Where plaintiff is employed by defendant to perform one sort of service, and is suddenly called upon by his superior to go to a place to work where he had never been before and concerning the exact conditions of which he was not warned, and had no time to make a careful examination; where there is a danger in performing the service under the circumstances, there is a duty upon the defendant, or its foreman who gave plaintiff the directions, to warn him of the danger. (Page 31.)

4. WITNESS—DISQUALIFICATION.—A witness is not disqualified because he was convicted by the jury of having committed an infamous crime, if the court entered no judgment of conviction against him. (Page 29.)

Appeal from Craighead Circuit Court, Jonesboro District; *Frank Smith*, Judge; affirmed.

*J. R. Turney*, for appellant.

1. As a matter of law the appellant was not guilty of negligence in the construction of the frame work and the location of the saw therein. The instrumentalities furnished were safe for the use for which they were intended, since it is undisputed that the only purpose of the doorway to the enclosure was to enable the saws to be placed on or taken off its wheels, and that this was never done and in fact could not be done until after the saw stopped. The proximate cause of the injury was not the construction of the enclosure nor the location of the saw therein, but the improper use thereof by appellee in entering the enclosure while the saw was in motion Labatt, Master & Servant, 73, 84; *Id.* 59; 57 Ark. 76; 97 Ark. 188.

Appellants duty to warn appellee was not violated. The evidence shows that he had been fully instructed how to use the instrumentalities. Moreover he had actual knowledge of the conditions, had seen and appreciated the same. 34 Ark. 632; 79 Ark. 68; 15 S. W. 141; 70 Ark. 386. Knowledge of the conditions will be imputed to appellee from the fact that they were open and obvious to him from the time of and during the continuation of his employment, and at the time of the injury. Labatt, Master & Servant, 238; 82 Ark. 538; 97 Ark. 489; Thompson on Neg., 4063; 57 Ark. 76; 23 L. R. A. (N. S.) 296; 47 N. E. 506; 40 N. E. 180; 68 N. E. 219.

2. Since the risk was one ordinarily incident to the business, and was open, obvious and fully ascertainable, appellee assumed the risk when he accepted the employment. 91 N. E. 300; 82 Ark. 17; 161 Mass. 153.

3. Appellee was guilty of contributory negligence, in failing to make such examination as would have revealed to him the conditions, if he was ignorant thereof, and in entering the enclosure while the saw was in motion. 182 Fed. 42; 93 Ark. 484; 90 Ark. 387; 41 N. W. 976; 101 N. W. 700; 78 N. W. 570. He was not exculpated by an order of the master. Labatt, Master & Servant, 1257; 80 N. W. 589; 36 N. E. 854; 105 N. W. 246; 61 N. E. 810.

4. The court erred in permitting Bullington to testify, he having been shown by an exemplification of a Missouri record to have been convicted of highway robbery. Kirby's

Dig., § 3095. The facts show a conviction within the meaning of the statute. Blackstone, 362, 364, 375; Bishop, Statutory Crimes, 348; 2 Simm. 40; Wharton, Criminal Pleading, 435; Bishop, Criminal Procedure, 815; 45 Pa. St. 372; 5 Fed. 152; 66 Pac. 372. Conviction in Missouri disqualifies here. 10 N. H. 22; 3 Hawk. 393.

*Lamb & Caraway,* for appellee.

1. There is ample evidence to show that there was negligence in the construction of the mill about the band saw; not only so, but that the resultant danger was not open and obvious but was hidden and concealed and therefore was not a risk assumed by appellee. Appellant owed the positive duty to warn appellee of the danger, and all the more so for that he was inexperienced. 92 Ark. 102, 108-11; 82 Ark. 11, 16-17; *Id.* 555; 90 Ark. 407, 411-12; 91 Ark. 102, 106-7; 56 Ark. 192, 196-8; 27 Ark. Law Rep. 253; 84 Ark. 382, 387. Before the master can be relieved from liability the facts must not only show that the servant knew of the danger as a possible source or cause of injury, but also that he appreciated the nature and extent of the danger and knew how to avoid it. 90 Ark. 407; *Id.* 473; 76 Ark. 69, 73; 53 Ark. 117.

2. Appellee was not guilty of contributory negligence. 82 Ark. 11, 19; 53 Ark. 458; 97 Ark. 553.

3. Appellee was a competent witness in his own behalf. A verdict of a jury, or even a plea of guilty, not followed by a judgment of a court will not constitute a conviction. 86 Ark. 317, 321-2. The same rule prevails in Missouri. 48 S. W. 833. See also, 16 Am. & Eng. Enc. of L. 248. But a conviction in a foreign jurisdiction, if complete, does not render a witness incompetent here. It can only go to his credibility. 16 Am. & Eng. Enc. of L. 250.

McCULLOCH, C. J. The plaintiff, Herbert Bullington, sues his employer for damages by reason of the loss of his arm, alleged to have been caused by negligence of the employer in the operation of a sawmill where plaintiff was working. The sawing was done with a large band saw, and plaintiff was employed as an offbearer of lumber from the saw. He had been employed at the mill only five days, about half of which time he had worked out on the yards. His duties as

offbearer were to take the lumber as it came from the saw
and convey it away to be stacked. When the saw became
dull, and it was necessary to remove it to be sharpened,
plaintiff, with other laborers, was called to assist in removing
it. There were two floors above the ground floor, where
the saw carriage was operated, one of them called the main
floor, and the other the floor of the filing room. There was
wooden boxing around the saw, extending from above the
carriage space, up through the two floors, and when the saw
was removed it was lifted from the wheels and drawn up to
the floor of the filing room. It usually required the services
of several men on each of the two upper floors in order to re-
move the saw. They released it from the wheels, and then
the men would take hold of it with their hands and draw it up.
On the main floor there were two doors to the boxed space,
one on each side, and on the inside there was a trapdoor or
lid, to prevent the sawdust being thrown up by the return
of the saw. In order to draw the saw up it was necessary to
raise these lids. The doors were twenty-two and one-half
inches, and the teeth of the saw extended out about two inches
beyond the casing and inside the doorway. This left a clear
space of a little less than twenty inches for the men to reach
in the doorway to lift the lids. The occasion when plaintiff's
injury occurred was the first time he had assisted at that
place in removing the saws; the other time when he was called
to do that work he went with other men up to the filing floor,
where the situation was somewhat different. On this day,
when the whistle blew, he was called with the others to assist
in removing the saw, and started up to the filing room floor,
when the foreman told him that there were enough men up
there and directed him to go to the door of the main floor
and raise the lid preparatory to changing the saws. He
testified that he opened the door, and inserted his arm to raise
the lid, when the teeth of the moving saw at the edge of the
door caught his elbow and cut his arm off. He states that he
did not know that the teeth of the saw projected into the
doorway and did not see it when he inserted his arm—that
when he opened the door sawdust flew up in his eyes. He
stated that he had never had occasion to open the door before
and did not know how the saw was situated, though he knew,

of course, that the saw worked inside of the boxing. Negligence of the defendant is charged in placing the saw so that the teeth projected into the doorway, and also in failing to give the plaintiff warning of that precise situation and danger to one who opened the door for the purpose of raising the lid. The trial of the case resulted in a verdict in plaintiff's favor, assessing damages at the sum of $1,000.00, and the defendant appealed.

The first contention is, that the plaintiff was incompetent as a witness in his own behalf on account of conviction for an infamous crime in the State of Missouri, and that the court erred in allowing his testimony to be introduced. The record of a court of competent jurisdiction in the State of Missouri was introduced, showing that plaintiff was indicted and placed on trial for the crime of robbery, and that he was convicted by the jury, but the record does not show the rendition of a judgment of conviction by the court. There were attempts to show by oral testimony, on the one side, that the verdict of the jury had been set aside and a new trial granted and, on the other side, that the judgment had not been set aside but that the plaintiff was paroled upon his own good behavior.

The record itself, which is the sole evidence of the conviction, fails to show any judgment. It is earnestly contended on behalf of defendant that it is the conviction by the jury, and not the judgment of the court, which disqualifies the witness. This court has, however, held to the contrary, and we must treat that question as settled. *Owen v. State,* 86 Ark. 317.

We do not find it necessary to pass upon the question whether a judgment of conviction in another State renders a witness incompetent to testify in the courts of this State. Many courts, including the Supreme Court of the United States, hold that judgment of conviction has no extra-territorial effect so as to come within the operation of the disqualifying statute of another State, unless the statute itself, in express terms or by necessary implication, includes convictions of courts in another State. There is some conflict in the authorities on that question, and we reserve decision upon it until it is presented in a case where it is necessary to determine it.

The only other contention is, that the undisputed testimony is not sufficient to sustain the verdict—that it fails to show any negligence on the part of the defendant and that it incontrovertibly establishes contributory negligence and assumption of risk on the part of the plaintiff himself.

We are of the opinion, however, that, giving the testimony its strongest probative force, it is legally sufficient to sustain the charge of negligence against the defendant in failing, under the circumstances, to give plaintiff warning of the danger which accompanied the performance of the particular service which he was commanded by his superior to perform. He was not employed to do that particular work, and had no experience in working under these circumstances. He was not told that the teeth of the saw extended over into the doorway, nor given any warning at all of danger in opening the door and inserting his arm. The jury might have found that the flying sawdust obscured his vision so that he did not see the projecting saw teeth and that he was entirely oblivious of that danger when he inserted his arm. We can not say as a matter of law that the situation with respect to the presence of the projecting saw teeth was so obvious that he was bound to take notice of it under the circumstances. He was suddenly called upon by his superior to go to a place to work where he had never been before and concerning the exact conditions of which he was not warned. He had no time to make a careful examination, and as there was danger in performing the service under the circumstances, there was a duty upon the defendant or its foreman, who gave plaintiff the directions, to warn him of the danger. Conceding that there was no negligence in placing the saw in that situation, nevertheless, if the danger was not so obvious that a reasonably prudent man, suddenly called on to perform service there, would be apt to discover it and appreciate it, then there was a duty to give warning. It is true the plaintiff was not an infant, but a man of mature years; yet he lacked experience and knowledge in doing the particular thing he was suddenly called on to do, and, therefore, the foreman was not absolved from the duty to warn under those circumstances. *Warren, etc. Co.* v. *Siggs*, 91 Ark. 102. The doctrine of duty to warn is based upon inexperience and lack of knowledge on the part of the

servant and the reasonable expectation on the part of the master that there is a danger to the unwarned servant; and this applies as well to an adult as to an infant, where the peculiar circumstances under which the work is to be done renders it probable that the danger will not be discovered. There is a difference, of course, not to be overlooked, between defects and dangers which existed at the time the employee takes service and which he has an opportunity to discover. Under those circumstances the doctrine of assumed risk applies, for when he takes service he impliedly agrees to assume the risk of all dangers from the appliances which are open to ordinary observation, and the duty devolves on him, even without special warning, to look out for such defects.

Nor can it be said as a matter of law that the plaintiff assumed the risk of the danger. The fact that he was sent there in an emergency, and without opportunity to examine the place where he was to perform the service and discover the dangers which he was about to encounter, renders the doctrine of assumed risk inapplicable, for that is a matter of contract; and he can not be held to have assumed the risk of a danger about which he knew nothing and had no opportunity to inform himself. *Southern Cotton Oil Co.* v. *Spotts*, 77 Ark. 458.

Whether or not he was guilty of contributory negligence in failing to observe the protruding saw teeth and avoid them was a question for the jury, and we can not say, as a matter of law, that he was guilty of negligence. The doorway was narrow, the saw teeth were in rapid motion, and his view was to some extent obscured by the flying sawdust. It was, therefore, a question of fact whether his conduct was such as does not square with that of a reasonably prudent man

No objection has been presented here to any of the rulings of the court in giving or refusing instructions. The judgment is, therefore, affirmed.

KIRBY, J., dissents.

SMITH, J., not participating.