STATE MEDICAL BOARD *v.* RODGERS.

4-3656

Opinion delivered February 4, 1935.

*Rowell, Rowell & Dickey* and *Peter A. Deisch,* for appellant.

*Marvin T. Reed, T. C. Trimble, William A. Roth* and *Gregory & Taylor,* for appellee.

McHANEY, J. On September 28, 1933, appellee was indicted in the District Court of the United States, for the Western Division of the Eastern District of Arkansas, charged with unlawfully and feloniously possessing counterfeit money. On November 8, 1933, he entered a plea of guilty to counts one, three and four of the indictment and not guilty as to count two. On November 10, 1933, the following judgment and sentence was rendered against him:

"Comes the United States of America by Ira Mack, Esq., assistant United States attorney, and comes the defendant to the bar of the court in answer to his recognizance, and, having previously entered a plea of guilty to the charge of possessing counterfeit money, and the court being advised in the premises, it is considered, ordered, and adjudged that this defendant be confined in the United States Reformatory for the term and period of three years. It is further ordered that defendant be allowed two weeks in which to prepare and that he may be held on his present bond."

On November 21, 1933, the Federal District Court made this order: "It is ordered by the court that the defendant, Porter Rodgers, be given until March 1, 1934, to commence the service of sentence heretofore imposed." But on March 1, 1934, said court made this order: "It is ordered by the court that defendant, Porter Rodgers, be held on probation for the term and period of five years."

Dr. Porter R. Rodgers is a physician and surgeon, having been licensed by appellant, the State Medical Board of the Arkansas Medical Society, to practice his profession, on the 15th day of June, 1929. For some years

last past he has been practicing his profession in Searcy, Arkansas. On December 22, 1933, after judgment of conviction and sentence heretofore mentioned had been rendered, appellant, through its officers and members, filed a complaint with itself against appellee charging that he had been convicted in said Federal District Court of said crime and sentenced as aforesaid on his plea of guilty; that said facts constitute moral turpitude on the part of appellee, and he was therefore guilty of being convicted of a crime involving moral turpitude as provided in § 8242, Crawford & Moses' Digest; and that same was a cause for the revocation of his license to practice medicine. It was alleged that said matters would be inquired into, and that he would be given a hearing either in person or by attorney on January 10, 1934, at 11 o'clock A. M., in the Governor's reception room at the State Capitol, and that he would be permitted to show cause, if any he can, why his license to practice medicine should not be revoked and canceled. Notice of this fact was duly served upon appellee, and at the appointed time and place he appeared in person and by attorney and demurred to the charges filed against him. On said date, January 10, 1934, appellant overruled his demurrer, and, upon his declining to plead further, it entered an order revoking his license to practice medicine in the State of Arkansas, to which he excepted. The record discloses that appellant had made two previous abortive attempts to revoke his license. Thereafter, on March 16, 1934, appellee filed his petition for a writ of certiorari to appellant in the Pulaski Circuit Court setting up all the proceedings had and done before appellant and praying an order of the court quashing, setting aside and holding for naught the order of appellant of January 10, 1934, revoking his license as aforesaid. Appellant demurred to the petition for certiorari. The court overruled said demurrer, and, upon its declining to plead further but electing to stand upon its demurrer, the court rendered judgment quashing, vacating and setting aside and holding for naught said order of January 10, 1934, revoking appellee's license, under date of June 16, 1934.

Appellant contends that the trial court erred in overruling its demurrer and in quashing its order of January 10, 1934, revoking appellee's license to practice medicine, and discusses the contentions, which are here urged to sustain the trial court's judgment, as follows: (1) that appellee was entitled to a fair and impartial trial before a fair and impartial tribunal; (2) that the statute, under which the charge against him was made, is unconstitutional and void as denying him due process of law; (3) that said statute is so vague and indefinite that it is not susceptible of reasonable interpretation; (4) that the crime of which he pleaded guilty is not a crime involving moral turpitude; and (5) that appellant had no jurisdiction to try appellee because no proper complaint had been filed against him.

As to these grounds but little need be said. We agree with appellant as to all of them. This court has already decided against appellee's contentions as to all of them except the 4th. As to point 1, see *Hall* v. *Bledsoe,* 126 Ark. 128, 189 S. W. 1041; *Green* v. *Blanchard,* 138 Ark. 138, 211 S. W. 375; *Boullion* v. *Little Rock,* 176 Ark. 493, 3 S. W. (2d) 334; *Measles* v. *Owen,* 185 Ark. 106, 46 S. W. (2d) 40. As to point 2, this court has sustained the constitutionality of the statute. *State Medical Board* v. *McCrary,* 95 Ark. 511, 130 S. W. 544; *Green* v. *Blanchard, supra.* As to point 3, the statute, § 8242, provides: "The boards may refuse to grant or may revoke a license for the following causes, to-wit: * * * (c) conviction of the crime involving moral turpitude." In *State Medical Board* v. *McCrary, supra,* we held that subdivision (d) of the same statute was valid against a like charge. It provides a ground of revocation as follows: "Publicly advertising special ability to treat or cure chronic and incurable diseases." "Moral turpitude" is a well-defined and easily understood term. In *Fort* v. *Brinkley,* 87 Ark. 400, 112 S. W. 1084, this court defined it as follows: "Moral turpitude refers to an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, but not to such acts as are not of themselves immoral, but whose illegality lies in the fact of their being

positively prohibited." Webster defines the term as follows: "The quality of a crime involving grave infringement of the moral sentiment of the community as distinguished from statutory *mala prohibita.*" Under these definitions, we have no hesitancy in saying that the crime for which appellee pleaded guilty is a crime involving moral turpitude. Possession of counterfeit money with intent to corrupt the currency of the country and with intent to cheat and defraud any person to whom it is uttered is a base and infamous crime.

But it does not follow that the judgment must be reversed. Other points have been argued by counsel for both parties in supplemental briefs. In view of the fact that appellee has not been required to suffer the punishment prescribed in the judgment and sentence abovementioned, the question naturally arises as to whether he has been convicted within the meaning of § 8242, Crawford & Moses' Digest. It is true that he pleaded guilty to a crime involving moral turpitude, and that he was sentenced to serve three years in the reformatory, but the court before whom that case was tried saw proper to set aside the sentence and put him on probation for a period of five years. On November 21, 1933, the execution of the sentence imposed was suspended until March 1, 1934, and on the latter date it was further suspended for five years; therefore at the time appellant held its meeting and revoked appellee's license, January 10, 1934, the sentence theretofore imposed had been suspended and something still remained to be done before he could be said to have been convicted within the meaning of the statute. In *Huddleston* v. *Craighead County,* 128 Ark. 287, 194 S. W. 17, one Jim Float was indicted in Craighead County charged with a felony, to-wit, unlawfully selling liquor. He entered a plea of guilty to the charge, and a judgment of guilty of said crime was entered and sentence suspended. The judgment of guilty carried with it the costs against said Float, but the court found that he had no money or property out of which the costs could be collected, and it was adjudged that Craighead County was liable for the costs which the clerk was ordered to certify to the county court, including the fee of the prose-

cuting attorney. The county court refused to allow the fee of the prosecuting attorney, and the circuit court, upon appeal, made a similar order. On appeal here the court said: "The question to be decided is, whether the plea, upon which the judgment set out above was entered, constitutes a conviction within the meaning of the § 3488, of Kirby's Digest." And we answered the question in the negative. After citing and quoting the sections of the digest relating to the fees of the officers, the court said: "Notwithstanding his *conviction,* by the verdict of a jury or a plea of guilty, the accused does not become a *convict* until there has been a judgment and sentence by the court." Citing *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466; *Michigan-Ark. Lbr. Co.* v. *Bullington,* 106 Ark. 29, 152 S. W. 999. The court further said: "In the case of *Barwick* v. *State,* 107 Ark. 115, 153 S. W. 1106, there was a plea of guilty and a continuance of the case under the direction that the fine be imposed at the pleasure of the court, but that the costs should be immediately paid by the defendant. It was there said: 'It may well be doubted whether the costs should be collected until final judgment was entered against appellant.'

"It was not necessary to decide in that case whether it could be done or not. However, we are now called upon to confirm the doubt there expressed; and we do now so hold. The judgment rendered is not a final one. Evidently, it was in the contemplation of the court that some further order might be entered. The defendant might be brought in under this plea at some subsequent term, and the punishment then imposed which the plea authorized. On the other hand, such plea might be withdrawn at the discretion of the court at a subsequent day, and a trial thereafter had. Upon which trial, the officer then prosecuting would also demand a fee if a conviction was secured; and, if there was an acquittal, you would have the situation of a fee paid by the county, where the accused had been acquitted." We think this case very much in point and decisive of the question here presented. There has been no conviction within the meaning of the statute. There has been no final judgment en-

tered because the sentence has been suspended, and the appellee has not been required to surrender himself in execution of such judgment. There not being a final judgment of conviction, appellant board was without authority, under this provision of the statute and under the charge made, to revoke his license, and the circuit court correctly quashed said order. The courts of other jurisdictions have held to the same effect. See *People v. Fabian,* 192 N. Y. 443, 85 N. E. 672, 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 100. In that case the court approved the dissenting words of Mr. Justice Clark, in the appellate division, to the effect that ''where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law, it is that conviction which is evidenced by sentence and judgment, and that where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended or postponed indefinitely, so also the indirect consequences are likewise postponed.'' See also *Commonwealth v. Kiley,* 150 Mass. 325, 23 N. E. 55; *Ex parte, Rosencrantz,* 211 Cal. 749, 297 Pac. 16; *Faunce v. People,* 51 Ill. 311. There are numerous cases to the effect that a person may not be deprived of his right of franchise or his right to hold office under a statute or constitutional provision taking away the right to vote or the right to hold office upon conviction of a felony, or crime involving moral turpitude, except upon a final judgment of conviction and sentence, and that, where the sentence has been suspended, the judgment is not final, and there has been no conviction within the meaning of such statutes and constitutional provisions.

We think the reasoning in the case of *Huddleston v. Craighead County, supra,* is sound and unanswerable, and that there was no more reason to hold that the judgment of conviction in that case was not final than there is in this.

It is also argued that a conviction of a crime involving moral turpitude referred to such a conviction under the laws of this State, and not to a conviction under the laws of a foreign jurisdiction, such as the Federal Court

or the courts of another State. We do not find it necessary to decide this interesting question in this case, as the conclusion we have reached on the point next above discussed makes it unnecessary. We. find no error, and the judgment is accordingly affirmed.

SMITH, J., dissents.