HOLCOMB v. STATE.

4647                                  238 S. W. 2d 505

Opinion delivered April 2, 1951.

*Hebert & Dobbs,* for appellant.

*Ike Murry,* Attorney General and *R. Ben Allen,* Special Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. The defendant was sentenced to a one-year prison term for stealing a cow. The motion for a new trial listed eight alleged errors, some of which are not argued. This is the second time Holcomb has been tried for the same offense. In an opinion rendered June 5, 1950, we reversed and remanded because an erroneous instruction had been given. *Holcomb* v. *State,* 217 Ark. 407, 230 S. W. 2d 487. In the cited case it was said that the evidence would support the verdict. In the appeal now before us there was substantial testimony—given by the defendant—that he bought the cow from Mancel Robbins and paid the seller $95 in currency. Robbins flatly contradicted this assertion. The jury had the right to believe either. Its rejection of the defendant's explanation is a matter we are not at liberty to undo if the trial in other respects was free of prejudicial error.

*First.*—After witnesses had been put under rule counsel for Holcomb called the court's attention to the presence of Robbins and his wife, who jointly owned a herd of 28 cattle from which the missing cow was said to have been stolen. The judge declined to include Robbins and his wife in the list of witnesses placed under the rule, and an exception was saved. No reason was assigned other than the court's general order relating to those who were to testify. It was not asserted that the presence of these two would prejudice the defendant's case.

It is within the court's discretion to enforce the rule as to particular witnesses and the exercise of this right cannot be successfully challenged where it is not shown that injury would attend a refusal to grant the motion. See *Mikel* v. *State*, 182 Ark. 924, 33 S. W. 2d 397, and other cases to the same effect.

*Second.*—During a colloquy between state and defense counsel while Holcomb was being cross-examined the court asked Mr. McCoy (assisting the prosecuting attorney) what the purpose of certain questions was. Mr. McCoy replied that they were to show that "Holcomb came down here after the cow sale was over and was so anxious to get rid of this *hot cow* that was on his hands"— At this point counsel for the defendant objected and asked that McCoy be reprimanded. There were requests that the statements be disregarded. Mr. McCoy then said, "I withdraw them, Your Honor," and the court replied: "The jury is told to disregard the statements of counsel in regard to the cow." There was no suggestion that the court's action was insufficient, hence the point as a count in the motion for a new trial was not well taken. It is not necessary to comment on what the effect would have been if an exception had been saved, but in any event it should be observed that the court did exactly what the defendant's counsel asked.

*Third.*—Appellant seems to have staked his appeal primarily on his belief that the court erred in admitting as evidence a certified copy of an old verdict. Holcomb was asked if he had ever been convicted of a crime—"of anything." He answered, "nothing [except that I paid a little fine], drinking, or something like that."

Question: "Were you, on February 6, 1925, convicted for false pretense?" Mr. McCoy then began reading: "Now on this day comes the State of Arkansas, by [its] prosecuting attorney, William G. Bouic"—

McCoy was cut short with an objection. McCoy explained that he was endeavoring to refresh the defendant's memory. Defense counsel then said: "He has denied it, and until they have introduced the official record his denial stands." The court sustained the objec-

tion and the prosecuting attorney said: "I offer in evidence a certified copy of the judgment of the Montgomery Circuit Court." In chambers the proffered evidence was taken under advisement, whereupon the jury was dismissed until the following morning.

When court reconvened Judge Brown announced that he had decided to permit the certified copy to be introduced. Defendant's counsel objected (a) because the copy was not signed by the judge of the Montgomery Circuit Court, and there was nothing to show that a sentence or judgment had been pronounced; (b) the jury's verdict, showing conviction, was insufficient, and (c) the instrument was offered while the defendant was still on the stand and prior to the introduction of rebuttal testimony by the state. A fourth objection went to the general proposition that the testimony would prejudice the defendant's rights.

Was the verdict admissible?

The certified copy, styled *State of Arkansas* (No. 576) v. *Oscar Holcomb,* followed by the words "False Pretense," was: "Now on this day comes the State of Arkansas by its prosecuting attorney, William G. Bouic, and comes the defendant in person and by attorney, Jerry Witt, and both sides announcing ready for trial, a jury of twelve good and lawful men were selected and sworn to try the issues, and after hearing the testimony adduced, instructions of the court, and argument of attorneys, the jury retired to the jury room for the deliberation of the evidence, and returned into the court the following verdict: 'We, the jury, find the defendant guilty and fix his punishment at imprisonment in the penitentiary for a period of one year. O. J. Goobehere, foreman.' " This record was duly certified by the circuit clerk.

Appellant's counsel emphasize the provisions of Ark. Stat's, § 28-707, where the methods of impeaching a witness are set out, closing with the phrase, ". . . except that it may be shown, by the examination of a witness, or record of a judgment, that he had been convicted of a felony."

Our cases do not appear to have held to the strict language of the statute. It was taken from Act 52 of 1905, and Act 52 amended § 3138 of Kirby's Digest. Kirby's § 3138 was § 2902 of Mansfield's Digest (1884), and Mansfield's section was in effect when Judge HEMINGWAY wrote the court's unanimous opinion in *Hollingsworth* v. *State*, 53 Ark. 387, 14 S. W. 41, in 1890. In discussing the admissibility of impeaching evidence, Judge HEMINGWAY said:

"The rules of law do not allow specific acts of misconduct or specific facts of a disgraceful character to be proved against a witness by others. *He may be proved by record evidence to have been convicted of an infamous crime,* but not to have done other infamous deeds, nor to have undergone personal disgrace. And even as to previous conviction of infamous crimes, the rule is seldom of any great service, because no one can be expected to know in advance what witness may appear, nor what may have been their history. *Unless the remedy is found in cross-examination,* it is practically of no account."

The distinction between proving by a record that a witness had been convicted of a crime, without showing judgment, and the necessity for proving by the record that judgment unconditional had been pronounced, came up for consideration before the common law interdiction against testimony of a felon was relaxed. By Act of March 24, 1885, it was provided that on the trial of indictments and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, "the person so charged shall, at his own request, but not otherwise, be a competent witness." The statute was mentioned in *Ransom* v. *State*, 49 Ark. 176, 4 S. W. 658. It was held that the Code of Civil Procedure making certain classes of offenders incompetent to testify did not extend to criminal procedure. Mansfield's Digest, § 2859. But, said Mr. Justice WILLIAM W. SMITH in the Ransom case, since infamy was a disqualification in criminal cases at common law, it continued unless removed by statute; and when *Ransom* v. *State* was decided at the May 1887 term the modification heretofore spoken of

permitted the accused to testify. Act No. 222 of 1913, Ark. Stat's, § 28-605, removed all disability imposed by the common law, but it expressly states that "evidence of his former *conviction* of any crime by a court of this or any other state, territory, or the United States, shall be admissible for the purpose of going to his credibility or the weight to be given to his testimony."

It will thus be seen that we have two statutes, one enacted in 1913 authorizing the introduction of evidence of a *conviction,* and the other, enacted in 1905, permitting proof of conviction to be shown by the judgment record. The Act of 1913 mentions both civil and criminal actions.

In an appeal decided in 1908, *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466, Mr. Justice HART said the universal rule is that "It is not the guilt that disqualifies the witness. . . . It is the judgment itself that renders him infamous." Clarence Sellman was offered as a witness, and counsel for Owen, the defendant, complained on appeal that the trial court should have excluded the evidence because of Sellman's conviction of grand larceny on a plea of guilty. The official entry read: "Wherefore it is the judgment of the court that sentence be withheld during the good behavior of the defendant." Although Judge HART said that the plea without judgment did not go to the competency of the witness, he did draw the distinction between the proceeding resulting in the court's right to pronounce judgment, (the plea) and concluded that only the judgment would render the defendant infamous.

A somewhat similar situation arose when (judgment affirmed in 1912) the contention was made that a defendant was incompetent to testify as a witness for himself. *Michigan-Arkansas Lumber Co.* v. *Bullington,* 106 Ark. 25, 152 S. W. 999. Herbert Bullington sued the lumber company for the loss of an arm. The record of a competent Missouri court was produced, showing that the plaintiff had been tried for robbery and convicted by a jury. After mentioning these facts Chief Justice McCulloch said, " . . . but the record does not show the rendition of a judgment of conviction by the court. There were

attempts to show by oral testimony, on the one side, that the verdict of the jury had been set aside and a new trial granted, and on the other side that the judgment had not been set aside, but that the [defendant in the criminal case] was paroled upon his own good behavior.''

The court's conclusion is thus stated by the Chief Justice: ''The record itself, which is the sole evidence of the conviction, fails to show any judgment. It is earnestly contended on behalf of the defendant [in the Arkansas action] that it is the conviction by the jury, and not the judgment of the court, which disqualifies the witness. This court has, however, (in the case of *Owens* v. *State*) held to the contrary, and we must treat that question as settled.''

This opinion was rendered before Act 222 of 1913 became a law. While the 1913 enactment did not by any express language repeal the provision now appearing as Ark. Stat's, § 28-707, and there is no repugnance that necessarily repeals or modifies that part of the 1905 statute permitting the state to contradict a witness by the record of a judgment, the issue here is one of credibility alone. Holcomb was not asked whether he had been *sentenced* on a criminal charge. Rather, the question was whether he had been convicted. The record introduced was in judgment form, but went no further than the recital of a conviction. It contradicted the witness on a material point and was, we think, admissible on the issue of truth or falsity. There was no objection that the Oscar Holcomb mentioned in the verdict and otherwise referred to in the court record was not the same person who was being tried in the case at bar.

We have, without analyzing the statute in question, repeatedly said that when a defendant in a criminal case undertakes to testify for himself his credibility may be impeached *by proof of a former conviction* of an infamous crime. *Smith* v. *State*, 74 Ark. 397, 85 S. W. 1123. In the cited case Judge McCulloch mentioned the statute making a defendant in a criminal case a competent witness in his own behalf, then added: ''But the fact of his conviction of the infamous crime can be used to affect his

credibility, the same as against any other witness." [In the Smith case a confession was involved.]

In *Hunt* v. *State*, 114 Ark. 239, 169 S. W. 773, L. R. A. 1915B, 131, Judge McCULLOCH cited *Benton* v. *State*, 78 Ark. 284, 94 S. W. 688, and the *Hollingsworth* case; also *Vance* v. *State*, 70 Ark. 272, 68 S. W. 37. He said that for the purpose of testing credibility of a witness he may be asked "about a judgment of conviction." Certainly by this language it was not intended to restrict cross-examination to instances where conviction had been followed by judgment.

Mr. Justice RIDDICK wrote the opinion in *Vance* v. *State* and cited *Southern Insurance Co.* v. *White*, 58 Ark. 277, 24 S. W. 425, and *Scott* v. *State*, 49 Ark. 156, 4 S. W. 750. But even before the *Bullington* case we had discussed "the record of a judgment" statute from the standpoint of conviction alone, for in *Vance* v. *State* Judge RIDDICK said:

" . . . Now, it is very probable that in passing this statute the legislative mind was directed mainly to the subject of impeaching witnesses, but it seems to me that the language is broad enough to cover any case where the conviction is proved for the purpose of affecting the testimony of the witness by whom it is proved, whether the effect of the conviction be to exclude his testimony by showing that he is incompetent, or whether it goes only to his credibility as impeaching testimony. As the statute by express terms permits the fact that a witness has been convicted to be shown either by his examination or the record, it seems to me that when that fact has been established, whether by a record or the testimony of the witness, the effect is the same. I see no valid reason for making a distinction in the method of proof between the case where the conviction goes merely to the credibility of the witness and when it renders him incompetent, nor do I believe that there is any such distinction in the statute. If the conviction is one that goes only to the credibility, it is for the jury to consider it with his testimony, but if it be a conviction that renders the witness incompetent, it seems to me that it is proper

for the presiding judge to exclude his testimony. . . . But, after a very careful and full consideration of this question, a majority of the judges have come to a different conclusion. . . . In the opinion of the majority of the judges, the [section dealing with impeachment] has reference only to the method of impeaching witnesses. They hold therefore that when the *conviction* of a witness is shown by his examination only, such conviction goes only to the credibility of the witness. In order to exclude the testimony of a witness on the ground that he has been convicted of a crime, they are of the opinion that *the record of his conviction* must be produced, when accessible. . . . The case of *Cash* v. *Cash,* 67 Ark. 278, 54 S. W. 744, is not [according to the majority view] in conflict with this conclusion, for the reason that in that case the conviction of the witness was admitted by the party to the action, and thus dispensed with further proof of that fact.''

In the *Cash* case Mr. Justice HUGHES said: '' . . . Having been convicted of petit larceny [the witness] was incompetent to testify, as there is no proof she had been pardoned.''

The cases to which attention has been called are cited to show that the term ''conviction'' has been used repeatedly, particularly where, as here, the issue was one of credibility.

Thus we return to the reason for the rule: a rule that upon the one hand—as Judge McCULLOCH said in the *Bullington* case—requires production of the judgment record (under the old law) where, as there, the purpose was to exclude testimony on the ground of incompetency based on infamy, and upon the other hand permits credibility to be put in issue by asking the witness if he had been convicted of a crime, with recourse by the adverse party to an authenticated record (if the conviction is denied) showing that a verdict of guilty had in fact been rendered.

Our conclusion is that in those cases where the question is confined to inquiries regarding *conviction* and there is denial, then contradiction may be shown by the

record as limited in this case, thus permitting the jury to consider the weight that should attach to any material statement made by such witness.

A discussion of witness impeachment will be found in vol. 3 of the Arkansas Law Review. It is part of a Review of Recent Arkansas Evidence Cases, written by Professor Ralph C. Barnhart, and begins at p. 40.

Affirmed.

ROBINSON, J., dissenting. In my opinion a reversible error was committed when the trial court permitted the State to introduce evidence calculated to impeach the defendant, when such evidence is not admissible in accordance with § 28-707, Ark. Stats., which is as follows:

"*Impeachment of witness of opposite party.*—A witness may be impeached by the party against whom he is produced, by contradictory evidence by showing that he has made statements different from his present testimony, or by evidence that his general reputation for truth or morality render him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown, by the examination of a witness, or record of a judgment, that he had been convicted of a felony." The Statute specifically provides that a witness cannot be impeached by evidence of particular wrongful acts except "by the examination of a witness, or record of a judgment, that he has been convicted of a felony."

The defendant was cross-examined in regard to any wrongful acts he may have committed and no complaint is made on permitting this cross-examination. However, the State was then permitted to introduce in evidence a record of a jury verdict to impeach the defendant. The Statute does not provide that a witness may be impeached by introducing in evidence a jury verdict, but a witness may be impeached by "record of a judgment that he has been convicted of a felony."

A jury verdict and a judgment are not one and the same thing. "When the law speaks of conviction, it means a judgment and not merely a verdict, which in

common parlance is called conviction.'' (24 C. J. S. 16). ''Conviction'' in the legal sense means a final judgment, conclusively establishing guilt. *Smith* v. *Todd*, 155 S. C. 323, 152 S. E. 506, 70 A. L. R. 1529.

The verdict may have been set aside within minutes after it was returned. It may be that no judgment was ever entered on the verdict. In fact, the record in this case indicates that there is no judgment of conviction. When objection was made to the introduction of the jury verdict as impeaching testimony, the objection was taken under advisement by the court, and the jury was dismissed until the following day. Thus, the State had ample opportunity to produce the record of a judgment of conviction if there had been one in existence to produce. No record of a judgment was brought forth.

The opinion of the majority points out that Act 222 of 1913 provides for the impeachment of a witness by evidence of his former conviction of a crime. The primary purpose of the 1913 Act was to remove, as a disqualification of a witness, the fact that he had been convicted of a felony. Prior to the passage of that Act, Judge RIDDICK, in the case of *Vance* v. *State*, 70 Ark. 272, 68 S. W. 37, had said:

''We take this occasion also to call attention to the backward state of the law in this state in reference to the competency of witnesses convicted of felony. The statutes which render such witnesses incompetent belong to a class of antiquated laws which suppress evidence, and which the wisdom of modern ages has discredited and shown to be unreasonable and injurious. They are of the same class as the laws which formerly forbade the parties to the suit from testifying and closed the mouth of the defendant on trial for his life, and should be repealed as these laws have been repealed, for such matters should go only to the credit or impeachment of the witness—not to the exclusion of his testimony.''

Moreover, the 1913 Act did not change the law as to the kind of evidence necessary to show a former conviction, which always has been a record of a judgment of

conviction. That is what the Statute says: "Record of a judgment"—not a jury verdict. In fact, up to this time it has been held that there is no conviction until there has been entered a judgment of conviction.

"Where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law, it is that conviction which is evidenced by sentence and judgment, and that where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended, or postponed indefinitely, so also the indirect consequences are likewise postponed." *State Medical Board* v. *Rodgers,* 190 Ark. 266, 79 S. W. 2d 83.

In the case of *Hollingsworth* v. *State,* 53 Ark. 387, 14 S. W. 41, the court held that a witness could not be impeached by proving specific acts of misconduct, but "he may be proved by record evidence to have been convicted of infamous crimes." When the court said record evidence of a conviction, it refers to a judgment of conviction because there is no conviction until the entry of a judgment.

The case of *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466, is directly in point with the case at bar, the only distinction being that in the Owen case an attempt was made to impeach a witness by the introduction of a court record showing that he had pleaded guilty to the crime of grand larceny. There, Mr. Justice HART said:

"It is of no consequence here, and it is not necessary to decide whether or not a circuit court has the power to indefinitely suspend or postpone sentence or judgment where there has been returned a *verdict of guilty,* or where the defendant has entered his plea of guilty, *for the reason that it is not shown that sentence was subsequently pronounced.* If the guilt of the party should be shown by his plea of 'guilty,' which has not been followed by judgment, the proof does not go to the competence of the witness. 1 *Greenleaf on Evidence,* (16th Ed.), § 375. *The universal rule is that it is not the guilt that disqualifies the witness, but that it is the judgment itself that*

*renders him infamous.* 1 *Bishop on Criminal Law* (5th Ed.), § 975; 1 *Wigmore on Evidence,* § 521.''

The case of *Michigan-Ark. Lbr. Co.* v. *Bullington,* 106 Ark. 25, 152 S. W. 999, is also directly in point with the case now under consideration. We quote therefrom as follows:

''The first contention is, that the plaintiff was incompetent as a witness in his own behalf on account of conviction for an infamous crime in the State of Missouri, and that the court erred in allowing his testimony to be introduced. The record of a court of competent jurisdiction in the State of Missouri was introduced, showing that plaintiff was indicted and placed on trial for the crime of robbery, and that he was *convicted by the jury, but the record does not show the rendition of a judgment of conviction by the court.* There were attempts to show by oral testimony, on the one side, that the verdict of the jury had been set aside and a new trial granted and, on the other side, that the judgment had not been set aside, but that the plaintiff was paroled upon his own good behavior.

''The record itself, which is the sole evidence of the conviction, fails to show any judgment. It is earnestly contended on behalf of defendant that it is the conviction by the jury, and not the judgment of the court, which disqualifies the witness. This court has, however, held to the contrary, and we must treat that question as settled. *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466.''

In the case of *State Medical Board* v. *Rodgers,* 190 Ark. 266, 79 S. W. 2d 83, decided in 1935, which, of course, was subsequent to the 1913 Act mentioned in the majority opinion, the Owen case and the Michigan-Ark. Lumber Company case were considered to be the law of this State, and, in addition to the quotation previously made from the Medical Board case, Mr. Justice McHANEY speaking for the court said:

''In *Huddleston* v. *Craighead County,* 128 Ark. 287, 194 S. W. 17, one Jim Float was indicted in Craighead County charged with a felony, to-wit, unlawfully selling

liquor. He entered a plea of guilty to the charge, and a judgment of guilty of said crime was entered and sentence suspended. The judgment of guilty carried with it the costs against said Float, but the Court found that he had no money or property out of which the costs could be collected, and it was adjudged that Craighead County was liable for the costs which the Clerk was ordered to certify to the county court, including the fee of the prosecuting attorney. The county court refused to allow the fee of the prosecuting attorney, and the circuit court, upon appeal, made a similar order. On appeal here the court said: 'The question to be decided is, whether the plea, upon which the judgment set out above was entered, constitutes a conviction, within the meaning of the § 3488, of Kirby's Digest.' And we answered the question in the negative. After citing and quoting the section of the Digest relating to the fees of the officers, the court said: *'Notwithstanding his conviction, by the verdict of a jury or a plea of guilty, the accused does not become a convict until there has been a judgment and sentence by the court.'* Citing *Owen* v. *State,* 86 Ark. 317, 111 S. W. 466; *Michigan-Ark. Lbr. Co.* v. *Bullington,* 106 Ark. 25, 152 S. W. 999. The court further said: 'In the case of *Barwick* v. *State,* 107 Ark. 115, 153 S. W. 1106, there was a plea of guilty and a continuance of the case under the direction that the fine be imposed at the pleasure of the court, but that the costs should be immediately paid by the defendant.' It was there said: 'It may well be doubted whether the costs should be collected until final judgment was entered against appellant.'

"It was not necessary to decide in that case whether it could be done or not. However, we are now called upon to confirm the doubt there expressed; and we do now so hold. The judgment rendered is not a final one. . . . There has been no conviction within the meaning of the Statute. There has been no final judgment entered because the sentence has been suspended, and the appellee has not been required to surrender himself in execution of such judgment." . . . .

If the rule which has prevailed in this State up to this time to the effect that there is no conviction until there is a judgment of conviction is to be departed from, and hereafter a person may be impeached by the proof of a jury verdict, and a judgment of conviction is not necessary as provided in the Statute, where is the stopping point? If a conviction can be shown by a record of a jury verdict where, apparently, there is no judgment record of conviction, then can a conviction be shown by oral testimony as was attempted in the case of *Michigan-Ark. Lumber Co.* v. *Bullington, supra?* Of course, the answer would be in the negative because the Statute does not authorize such evidence. Neither does it authorize impeachment of a witness by showing a previous conviction by any method other than ''by the examination of a witness, or a record of a judgment, that he had been convicted of a felony.''

For the reasons set out herein I respectfully dissent and am authorized to say that Mr. Justice McFADDIN and Mr. Justice GEORGE ROSE SMITH join me in the view expressed herein.