BARNES *v.* COOPER, ADMINISTRATOR.

4-6718                                        161 S. W. 2d 8

Opinion delivered April 20, 1942.

*M. P. Watkins,* for appellant.

*Giles Dearing,* for appellee.

McHANEY, J.   Appellants are the children and heirs at law of Minnie Maude Cooper by a former husband and Hubert Barnes is the administrator of her estate. Appellee is the administrator of the estate of his deceased father, D. O. Cooper, appellee and his brother being the children of said D. O. Cooper by a former marriage. On December 29, 1940, Minnie Maude Cooper shot and killed her then husband, D. O. Cooper. About 30 minutes later she committed suicide by shooting herself. No children were born of that union, but as stated above, each left children by a former marriage.

At the time of his death, D. O. Cooper was engaged in the logging business and had been so engaged for some considerable time. He owned some personal property, consisting of live stock, logging equipment and cash of a total value in excess of $2,000. His wife, Minnie Maude Cooper, was running a camp boarding house. Appellants claimed that their mother was the absolute owner of a one-half interest in the personal property of her husband and filed a claim for same as the heirs of their mother. They also claimed that said personal property was acquired as a result of the joint efforts of the husband and wife, and that, upon the prior death of D. O. Cooper, their mother became immediately vested with a dower interest of one-third of the remaining one-half of said personal property of her husband, and to the additional sum of $450, statutory allowances, under §§ 80 and 86 of Pope's Digest. Appellants also claim that appellee, as administrator of his father's estate, should be charged with the following items:

| | |
|---|---:|
| Sale of personal property at auction | $1,573.55 |
| Cash on hand | 619.88 |
| One pump, pipe, tent and a note of Hamlin | 166.00 |
| One horse | 50.00 |
| One item unaccounted for in inventory | 45.00 |
| One-half of an item of $49 unaccounted for | 24.50 |
| Or a total of | $2,478.93 |

Appellants' claim, however, is $95 less than this amount, as they say the total amount chargeable to appellee is $2,383.93. Of this amount they say their mother owned one-half or $1,191.16 as her individual property. Also they claim, because she survived him, a dower interest in his half, or one-third of $1,191.96 which is $397.32, plus $450 as statutory allowances, making a total claim of $2,039.28. This amount deducted from the total estate of $2,383.93 leaves $344.65 with which to pay costs of administration and to distribute to appellee and his brother as their share of their father's estate, thus leaving them everything the hen laid except the egg.

Trial resulted in a finding that, upon the death of D. O. Cooper, his widow became entitled to one-third of his personal estate (found to be the sum of $2,247.93) which descended to appellants as her heirs upon her death. All other claims of appellants were disallowed, including the claim that she owned a one-half interest in said property. There is here a direct appeal and a cross-appeal by appellee from the order allowing a one-third interest to appellants as the dower interest of their mother.

Appellants first contend they should have a judgment against appellee for $2,039.28 by default because he did not file an answer or other pleading as a defense to their claims. No written pleading was necessary or proper. If they ever presented a claim to him as administrator, the record does not show it. They presented their claims to the court and he appeared and contested their rights so asserted.

Appellants also say they were entitled to the statutory allowances of $300 under § 80 and $150 under § 86 of Pope's Digest. These allowances were never claimed by her as she was the widow for about 30 minutes only. It appears to us, as it did to the trial court, that these allowances are personal to the widow, in the absence of minor children, as here, and if the widow dies before the allowances are made to her, the right thereto terminates and does not pass to her heirs. Section 80 provides that the widow "May retain the amount of three hundred dollars out of such personal property at its appraised

valuation." This necessarily contemplates the appointment of an administrator and an appraisement of the deceased husband's property. After which time she "may retain" said sum "out of such personal property at its appraised valuation." The right thereto is permissive, and, by § 87, "The widow shall apply for such property before it is distributed or sold, and not after," and this section applies to the allowance under § 86, as well as to that under § 80. The court, therefore, correctly disallowed these claims.

Another contention of appellants is that their mother was the owner absolutely of a one-half interest in said property, to which they succeeded as her heirs. The trial court found and held that she was not such owner, and we do not find any evidence in the record to overcome such finding.

The question that has given us the most concern is whether she, having shot and killed her husband under circumstances that may or may not have been murder, is entitled to dower in his property. This question is raised by the cross-appeal. In 26 C. J. S., p. 1055, § 47, the general rule is stated as follows: "According to the majority view, the operation of a statute of descent is not affected by the fact that the death of the intestate was caused by the heir apparent in order to obtain the inheritance at once, and therefore an heir who causes or procures the death of the intestate in order that he may inherit the estate at once is not disqualified from taking in the absence of a statute expressly disqualifying him. There is, however, a strong minority view to the contrary, based on the theory that a person should not profit from his own wrong; and it is said that this view displays a tendency to become the majority view. To meet the difficulties arising in such a case, several states have enacted valid statutes intended to prevent a person who has feloniously caused the death of decedent from inheriting or receiving any part of the estate of decedent; but such a statute must be strictly construed and in some situation is held not applicable. A statute disqualifying one who has been convicted of the murder of deceased does not apply in the absence of such conviction, as where there

has been a conviction of manslaughter only, or the person who committed the homicide was insane at the time, or committed suicide shortly thereafter. Also, a statute prohibiting a person from acquiring by descent or distribution any interest in the estate of another whom he has killed in order to obtain such interest is not operative by virtue of an unlawful homicide alone, but only where the killing was done in order to obtain the estate, or an interest therein, of the person killed.''

One of the cases cited in a footnote to support the statement that ''A statute disqualifying one who has been convicted of the murder of deceased does not apply in the absence of such conviction, as where—the person who committed the homicide—committed suicide shortly thereafter,'' is In re *Tarlo's Estate*, 315 Pa. 321, 172 Atl. 139. Under a statute of that state, providing that no person who shall be finally ''adjudged'' guilty of murder in the first or second degree shall be entitled to inherit the estate of the person killed, it was held that the word ''adjudged'' meant the judgment of a court of competent jurisdiction to pass on the question of guilt in murder, and was the equivalent of convicted and sentenced; and that the ''estate of father who fatally shot daughter and then committed suicide held not precluded from taking daughter's estate by inheritance, since father had not been 'adjudged' guilty of murder within statute precluding inheritance.'' Headnote 1. The Pennsylvania statute is quite similar to ours, the latest being § 3 of Act 313 of 1939, which provides: ''Whenever a spouse shall kill or slay his or her spouse and such killing or slaying would under the law constitute murder, either in the first or second degree, and he or she shall be convicted of murder for such killing or slaying, in either the first or second degree, the one so convicted shall not be endowed in the real or personal estate of the decedent spouse, so killed or slain.'' This section is almost an exact copy of § 1 of Act 190 of 1927, digested as § 4397 of Pope's Digest. We are of the opinion that the word ''convicted,'' as used in said statute, means convicted and sentenced in a court of competent jurisdiction, the circuit court of the proper county. The probate court, from which

this appeal comes, would have no such jurisdiction and it did not undertake to determine this question. Since Minnie Maude Cooper was not tried or convicted of murder for the killing of her husband, but committed suicide shortly thereafter, the above statute does not exclude her or her heirs from asserting dower in her husband's property. In the case above cited, In re *Tarlo's Estate,* three judges dissented from and one concurred in the majority opinion. The courts are very much divided on the question, but it appears the majority view supports the holding in said case, although it is stated in *De Zotell* v. *Mut. Life Ins. Co.,* 60 S. D. 532, 245 N. W. 58, that the minority view displays a tendency to become the majority view. This last mentioned case was cited and quoted from with approval in our own recent case of *Horn* v. *Cole, Administrator,* 203 Ark. 361, 156 S. W. 2d 787. In that case Sarah Horn shot and killed her husband who held a policy of life insurance in the sum of $1,000, in which she was the named beneficiary. The insurance carrier brought an interpleader's suit in the Pulaski chancery court, making her and Cole, the administrator of his estate, parties, paying the money into court. The administrator answered that the beneficiary, Sarah, had disqualified herself from receiving anything under the policy because she had wrongfully and unlawfully killed the insured, and prayed that the entire proceeds of the policy be paid to him as administrator. Sarah answered and denied her disqualification or that she had wrongfully or unlawfully killed the insured. She also alleged that she was indicted, tried and acquitted of the offense of said killing in the Saline circuit court, and asked that she recover the proceeds. Trial resulted in a decree for Cole, administrator, and that "Sarah Horn shall take no part of the proceeds of said policy, either as beneficiary or as widow of Fred Horn." We affirmed that decree, holding that the record made on the criminal charge was not admissible to show her guilt or innocence in the civil action involving her right to the proceeds of the policy, but the court trying the civil action would determine her guilt or innocence in so far as her right to the proceeds was concerned. And it was further held, to quote a

124

headnote: "Public policy denies the right of a beneficiary who has murdered the insured to the proceeds of insurance policies on his life, appellant who had killed her husband could not take any part thereof as dower, since the same principle of public policy which precludes her from claiming directly under the insurance contract precludes her from claiming under the statute of descent and distribution."

This holding was made apparently without reference to the statute above quoted, § 3 of Act 313 of 1939, and it may be sound as applied to the proceeds of insurance policies. All the courts hold that a sane beneficiary who unlawfully and feloniously kills the insured cannot recover as beneficiary. But the courts are divided as to whether the beneficiary, in such case, may share in the proceeds, which go to the estate, as heir or take dower as widow. As to the ordinary estate of a deceased spouse who was murdered by the other spouse who was convicted thereof, the legislature has said that such a spouse shall not be endowed. Having stated the conditions on which dower will be denied, it follows that, such conditions excepted, the spouse will be endowed in the real and personal property of the deceased spouse.

The case will, therefore, be affirmed on the cross-appeal.