CARROLL *v.* SCHNEIDER.

4-8170                                    201 S. W. 2d 221

Opinion delivered April 21, 1947.

*J. Fred Jones,* for appellant.

*J. B. Reed,* for appellee.

SMITH, J. This is a petition for a writ of mandamus, and as grounds for its issuance the following facts were alleged: Petitioner, a resident citizen of Lonoke county, is an independent candidate for the office of County Judge of Lonoke county, and the defendants constitute the Board of Election Commissioners for that county. Pursuant to, and in compliance with, § 4705, Pope's Digest, he filed a petition with the said Board of Election Commissioners, praying that he be certified as an independent candidate for the office of County Judge of Lonoke county. The petition addressed to the Election Commissioners was filed with them October 21, 1946, and contained the names of seventy-seven alleged electors of that county. On October 25, 1946, petitioner was advised by the Election Commissioners that his name would not appear on the ballot as an independent candidate at the election to be held on November 5, 1946, because thirty-four of the seventy-seven signers of the petition were not electors for the reason that they had failed to sign their assessment blanks when their poll taxes were assessed, and eight of said signers had paid no poll tax at all, and that his name would not be placed on the ballot as a candidate for the reasons stated. This action of the Election Commissioners was alleged to have been arbitrary and unauthorized and it was prayed that a writ of mandamus issue, requiring the Election Commissioners to place petitioner's name on the ballot as a candidate pursuant to the petition filed by him.

A demurrer to the petition for mandamus was sustained and the petition dismissed, and from that order is this appeal.

Section 4705, Pope's Digest, pursuant to which the original petition was filed, provides that: ''The nominations of candidates shall be certified in the following

manner: By the chairman and secretary of any convention of delegates, or of the canvassing board of any primary election, held by authority of an organized political party in the State, or subdivision thereof, in which such convention or primary election is held; and also, by electors of the State, district, county, township, ward of a city or incorporated town, for which the nomination is made. Provided, the number of signatures of electors so required shall not be less than fifty, nor more than one thousand, for the State or any district or county, and not less than ten, nor more than fifty, for any township, or ward of a city or incorporated town.''

The statute does not prescribe how, or in what manner Election Commissioners shall determine the sufficiency of the petition of one who wishes to become a candidate by petition. But of necessity, they have the right to determine the *prima facie* sufficiency of the petition. For instance, they may and should count the number of signers and if it were found that there were less than fifty of these, the petition should be dismissed. But here the Election Commissioners exercised a power which the law did not confer upon them. After ascertaining that eight persons who signed the petition had not paid their poll taxes, leaving sixty-nine who had paid, they proceeded to determine the validity of the poll tax receipts of thirty-seven signers who had paid their poll taxes. After deducting the names of the eight signers who had not paid their poll taxes, there remained on the petition the names of sixty-nine persons, who had paid, and a *prima facie* showing of compliance with the law had been made, and the power and authority of Election Commissioners was at an end.

The duties of the Election Commissioners are ministerial and not judicial. They have the power to determine whether a *prima facie* showing of a sufficient petition has been made, but they have no other function.

Now the ballot cast at an election by one not eligible to vote may be discarded, although he possesses a poll tax receipt. In other words, a poll tax receipt does not qual-

ify one to vote, who is not otherwise qualified. Provision is contained in § 4730, Pope's Digest, for challenging the right to vote of one who is not eligible. The statute just cited provides that: ". . . when the ballot of any voter is thus challenged, it shall be the duty of the judges and clerks in said election precinct to make and retain a list of the names of all such persons so challenged and the ballots of all such persons shall be counted, preserved and separated from the remaining ballots to the end that the right of any such person to vote may be later determined either by the county central committee or the court in which an election contest may thereafter be filed." There a practice is prescribed and a power is conferred to determine the elector's qualifications. But here this is not true after a *prima facie* showing has been made of the sufficiency of the petition to have one's name placed on the ballot.

It will be remembered that this is not an election contest, nor is it a proceeding to enjoin the Election Commissioners from certifying the name of one as a candidate who had petitioned that action. Those would be judicial proceedings in which the facts could be inquired into and determined. Here the Election Commissioners, after determining that holders of sixty-nine poll tax receipts had signed the petition, then proceeded to adjudge also the question whether those persons had properly assessed their poll taxes. The law confers no such authority, and their determination cannot be given a judicial effect.

The opinion in the case of *Irby* v. *Barrett*, 204 Ark. 682, 163 S. W. 2d 512, is decisive of this question. There the Chairman and Secretary of the Democratic State Committee had refused to certify the name of Irby as a candidate for the State Senate from the district in which he resided, as required by the rules of the Democratic party. It was conceded that Irby had complied with the rules of the party to become a candidate, but the Chairman and Secretary of the party committee refused to certify Irby's name as a candidate for the reason, as

found by them, that Irby was ineligible to serve if elected, inasmuch as he had been convicted of a felony, to-wit: the crime of embezzling public money.  In awarding the writ of mandamus directing that Irby's name be certified as a candidate, we held that the Chairman and Secretary were without power to refuse to certify the candidacy of one who had complied with the rules of the party in that behalf.  In so holding we said: "Certainly no law of this state confers that power and we are cited to no rule of the party conferring it.  Certain it is that the chairman and secretary of the state committee are clothed with no judicial power.  Their duties are purely ministerial, . . ."

In that connection, it was there further said: "If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible.  For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law; and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office.  So with other qualifications, such as residence.  May this question be considered or decided by the chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the party; but it is certain that this has not yet been done.  If this can be done, and should be done, the door would be opened wide for corrupt and partisan action.  It might be certified that a prospective candidate has sufficiently complied with the laws of the state and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket.  It would afford small satisfaction if, after the ticket had been printed with the

name of the candidate omitted, he have a holding by the court that the name should not have been omitted."

That opinion cited a case from Kentucky, and another from Louisiana which fully sustained our holding, and we are now cited to an opinion by the Supreme Court of Nevada in the case of *State* v. *Glass,* 44 Nev. 234, 197 Pac. 472. There a circuit court had upheld the action of a county clerk in striking from his files a certificate of nomination for a public office, for the reason that signers of the petition to have the petitioner's name placed on the ballot as a candidate had neglected to add to their signatures their places of residence as required by law. A strong opinion discussed the power of officers who have only a ministerial duty to perform, and in reviewing the action of the circuit court it was said: "We do not think that the legislature intended to vest in a mere ministerial officer such important power as to pass upon the validity of a nomination certificate before accepting and filing it." Nor do we.

It is urged, however, that the case is now moot, and should be dismissed for that reason. It is moot in the sense that we cannot now afford appellant petitioner any relief, but it is not moot in the sense that it is important to decide a practical question of great public interest, which may arise in any future election.

The question presented is one which may arise at any election hereafter held where ministerial officers usurp a judicial function. There is here a question of practical importance and of great public interest, and if not now decided, some other candidate may be deprived of the right to run for a public office and his right to do so may become a moot question before it could be decided, on account of unavoidable delay in the law.

A consideration of such a possibility induced the Supreme Court of Oklahoma, in the case of *Payne* v. *Jones,* 146 Pac. 2d 113, to decide a question which would otherwise have been dismissed as being a moot question, and gave as the reason for so doing that the case was of a type which soon becomes moot, and it would be difficult

to get a decision before it also became moot when the question again arose.

The Supreme Court of Pennsylvania, in the case of *Werner* v. *King*, 310 Pa. 120, 164 Atl. 918, dealt with a case which, under the facts stated, had become moot, but the court said: "These facts render moot the question raised. Ordinarily this would be stated, without more, and the appeal dismissed. We have, however, dealt with the substantial question involved, because it is one which can be raised any year hereafter, when the lists are about to be advertised, unless settled by us; but, having done this, we must enter an order appropriate to the existing situation. The appeal in this case is dismissed." Nevertheless, for the reason stated, the question presented was decided. See *Brown* v. *Anderson*, 210 Ark. 970, 198 S. W. 2d 188.

So here, we have a question which may arise at any future election and under the circumstances which would prevent a decision until the question had likewise become moot. We hold, therefore, that the Election Commissioners were without authority to refuse to certify appellant's name as a candidate, although the decision profits him nothing, and his appeal must now be dismissed for the reason that we are powerless to render him any assistance in the enforcement of a right wrongfully denied him.

It is insisted that the demurrer was properly sustained for the reason that the petition for the writ was not verified. This was a question which should have been raised by a motion to require verification or to dismiss for the refusal to verify and not by demurrer. *Hardwick* v. *Campbell & Co.*, 7 Ark. 118; *Mayor* v. *State Bank*, 8 Ark. 227; *Loring* v. *Flora*, 24 Ark. 151; *Greenfield* v. *Carlton*, 30 Ark. 547; *Clarke* v. *Wanamaker*, 184 Ark. 73, 40 S. W. 2d 784.

It was error to have sustained the demurrer to the petition, but as no relief can be afforded, the cause is dismissed. Having jurisdiction to determine this question, it is ordered that all costs be assessed against appellees.

Robins, J. (dissenting). I respectfully dissent. The controversy involved in this case has become moot, and the appeal, in my opinion, should be dismissed for that reason. "It is not the policy of our law with respect to litigated cases to decide questions which have ceased to be an issue by reason of facts having intervened rendering their decision of no practical application to the controversy between the litigants." *Quellmalz Lumber & Manufacturing Company* v. *Day*, 132 Ark. 469, 201 S. W. 125. In the case of *Kays* v. *Boyd*, 145 Ark. 303, 224 S. W. 617, we said: "In a case note to Ann. Cas. 1912C, at page 247, it is said that the current cases have held that a court in reviewing a decision upon an application for a writ of mandamus will not disturb the judgment of the lower court, where, pending the appeal, an event occurs whereby the question litigated and determined below has ceased to be of any practical importance, but is academic merely." See, also, *Blakely* v. *Newton*, 157 Ark. 351, 248 S. W. 907; *Huff* v. *Freeman*, 181 Ark. 312, 26 S. W. 2d 77.

If the case is to be determined on its merits, we ought not to censure election commissioners for complying with the rulings of this court as to what constitutes a qualified elector. Assuredly, when a nominating petition is presented to election commissioners they ought not to act on it blindly, without determining whether it is signed by persons who are qualified under the law to sign it. Public officers such as election commissioners should not be held as mere automatons. They ought to be permitted to exercise their ability to read public records and to act upon knowledge so gained in performing their official duties.

The majority seems to concede that the commissioners may investigate and find out what signers of such a petition have poll tax receipts, but the majority says the commissioners should go no further. In other words, the election commissioners may find from the record that the poll tax receipts held by signers of the nominating petition are, under our decisions, absolutely void, but, says the majority, the election commissioners must disregard what the records show as to failure of the

poll tax holder to assess and also disregard what this court has said as to the effect of such failure. Under the ruling of the majority an independent candidate may be nominated by a petition signed by persons none of whom would be qualified to vote for such candidate in the election.

Since the decision, rendered in 1932, in the case of *Collins v. Jones,* 186 Ark. 442, 54 S. W. 2d 400, this court has consistently held, to use the language of the majority in the recent case of *Stephens* v. *O'Neel,* 210 Ark. 570, 196 S. W. 2d 917, "that to be a qualified elector one must both *assess* and pay his poll tax in the manner provided by law." (Italics supplied). *Henderson* v. *Gladish,* 198 Ark. 217, 128 S. W. 2d 257.

Now, in the case at bar, the election commissioners apparently found from the public records that certain signers of the nominating petition had not assessed their poll tax in the manner provided by law and they disregarded their signatures because this court has frequently said that such persons were not qualified electors. For following the plain mandate of this court these commissioners are now criticised by this court. The majority seems to hold that the commissioners could look at the poll tax record, but that they ought not to look at the assessment record—this in the face of the oft repeated declaration of this court that assessment for poll tax is as essential a requisite of eligibility of a voter as payment of poll tax.

(I have heretofore taken occasion to say that I disagree with the above decisions because, as it appears to me, they have added requirements to the eligibility of voters not authorized by the constitution. See dissenting opinion in *Stephens* v. *O'Neel, supra.* The General Assembly of 1947 undertook by Act No. 220, approved March 18, 1947, to legislate out of existence the pronouncement of *Collins* v. *Jones, supra,* and other cases holding that a proper assessment was essential to a valid poll tax. That Act, however, by its terms, does not become effective until October 2, 1947.)

The rule promulgated by this court in the Collins case and other cases cited above is now and was, when the election commissioners acted on appellant's petition, the law in this state; and surely public officials ought not to be judicially condemned for following the decisions of the state's highest court.