DOTSON *v.* RITCHIE.

4-8203                                    202 S. W. 2d 603

Opinion delivered June 2, 1947.

*Sullins & Perkins,* for appellant.

*Lee Seamster,* for appellee.

SMITH, J. John Robert Dotson, who was the nominee of the Republican Party for the office of Sheriff of Madison county at the general election held in that county on November 5, 1946, was opposed for that office by Berry Denney, the Democratic candidate. Lester Keck, W. J. Ledford and Elmo Ritchie were the election commissioners having supervision of the election. The first named was the representative of the Republican Party, while the two latter were the Democratic election commissioners.

After the election had been held and the commissioners began to count and compile the returns of the election, and after compiling all the returns except the absentee ballots, it was found that only a few ballots separated the candidates, and that the absentee ballots, of which there were about two hundred, would be decisive of the election. They counted and have certified fifty-one of these, of which the Republican candidate received thirty-one votes, and the Democratic candidate, twenty votes, but they made no count and filed no certificate as to the remaining one hundred fifty absentee ballots. The Republican election commissioner demanded that the remaining ballots be counted and certified and when that demand was refused Dotson filed suit in the circuit court praying that a writ of mandamus issue, requiring the commissioners to count and certify all the regular absentee ballots. The Republican commissioner filed an answer in which he admitted the truth of all the allegations contained in the complaint, and specifically admitted that the Democratic election commissioners ''are refusing to consider, count or certify said legal ballots in said ballot box.'' The Democratic commissioners filed an answer in which they averred that ''all the legal ballots cast are now in the Absentee Ballot Box for Madison county, Arkansas, have been counted and the tabulation is now complete; that they are now ready to certify said legal ballots in said Absentee Ballot Box, that they have complied with the law and are ready and willing to further comply with the law and certify said count of all *true and legal ballots* as the true returns of all the legal votes cast and now in the Absentee Ballot Box in and for Madison county, Arkan-

sas; that their tabulation of said election is now complete, that they are now ready to certify the result of said election.''

After the writ of mandamus was denied they did certify to the Secretary of State that fifty-one absentee ballots had been cast. According to the undisputed testimony there were two hundred ballots in the absentee ballot box. Section 4780, Pope's Digest, requires the county election commissioners to prepare ballots for the use of absentee voters, and § 4781 prescribes the affidavit which the voter must execute to accompany his ballot, and § 4782 provides how the ballot may be transmitted to and be returned by the voter to the county clerk of the county in which the voter resides, who does not personally cast his absentee ballot. These sections were amended in 1941 in respects unimportant here to recite. By § 4797, Pope's Digest, it is made perjury to willfully swear falsely as to any statement required to be made in those sections of the statute.

Section 4783, Pope's Digest, reads as follows: ''All such ballots as provided in §§ 4781 and 4782 shall be by the county clerk given to the county election commissioners in cases of general elections; said ballots shall be opened and if found regular, shall be counted as cast and registered as a part of the total vote for or against all candidates or measures submitted in any special or general election.''

This section defines the duties and limits the power of the election commissioners in counting those ballots which have not been challenged, as authorized by § 4795, Pope's Digest, which reads as follows: ''The vote of any absent voter may be challenged for any cause, and the board of election commissioners, canvassing board of said primary party or chairman and secretary shall have all the power and authority by law as judges of election of primary to hear and determine the legality of such ballot.''

Their duty where no ballot was challenged, and none was challenged here, except by the commissioners themselves, who held no hearing to determine that question, is defined by § 4783, Pope's Digest, which has been copied above.

Election commissioners thus serve a dual capacity. First and primarily as a canvassing board, and where no voters have been challenged, as in this case, their duties are purely ministerial. They have the duties of election commissioners in canvassing absentee ballots and while acting in that capacity they have the power and authority of election judges to hear and determine the legality of the challenged ballots. They have and are given no power to arbitrarily disfranchise an elector who has cast a ballot, regular on its face, and may do so only after a hearing and determination of its legality.

The elector has the right to be heard in defense of his ballot before he is disfranchised, and the commissioners did not accord that right. It was proposed that the ballots, which were at hand, be examined in open court. This request was denied. This hearing and determination should have been held there, or at some other place, before a qualified elector was denied the highest and most valuable right of his franchise, that of exercising the right to vote and to have his vote counted. As has been said, this was not done. The commissioners refused this hearing and for reasons which they did not disclose except to say they were satisfactory to themselves, they counted and certified only fifty-one of the absentee ballots.

Now the testimony shows that some of the ballots in the absentee ballot box were not "regular," that is they had not been prepared as required by the section of the statute above cited, but it does not appear how many of such ballots there were. These were properly excluded from the count as only regular ballots of qualified electors may be counted, but all regular ballots of such electors should have been counted. The commissioners were without authority to exclude any regular ballots of qualified electors. What are regular ballots? The obvious answer

is that they are those which are prepared and cast as substantially required by law. Did the commissioners count all the regular ballots? The undisputed testimony is that they did not.

Commissioner Ledford was the principal witness for himself and his Democratic associate, and when asked why he had not counted the one hundred fifty ballots which were rejected he answered, "Well there are several reasons, some being illegal on their face." When asked in what respect, he answered, "Well probably the affidavit was not properly signed or made out. Others had not been signed. There are a number of reasons that those were rejected." In other words, the majority of the commissioners passed upon the question of the legality of the ballots as well as their regularity in an *ex parte* manner. The law gave them the power to pass upon regularity from the face of the ballot, but did not give them the power to pass on their legality without a hearing and determination of that question.

The testimony of the Republican election commissioner was not denied that a considerable number of the ballots were rejected and not counted because of some opinion of the other commissioners "not based on the formality of the face of the ballot, or of the affidavit." The commissioners therefore failed to discharge a ministerial duty which the law imposed on them, as they should have counted all the ballots which were regular, and not challenged, in as much as they were without power to pass upon their legality, without a hearing on the question, which decision would require a consideration of such questions as the age and place of residence of the voter, etc.

The trial court was evidently of the opinion that the commissioners had the power to pass upon the question of the legality as well as the regularity of the ballots in an *ex parte* manner. That this is true is reflected by the order of the court denying mandamus, which reads as follows: "The court's order will be to the effect that the commissioners will be required to certify the results of

the election within the time prescribed by law. As I understand it, there is no dispute about that part of it. They can certify what they consider to be the legal ballots in this particular instance, along with all the other matters that they have before them as commissioners, the absentee ballots being the only matter of dispute here." Pursuant to this decision the commissioners certified to the Secretary of the State fifty-one ballots which they determined were legal ballots, but made no count or certificate as to the remainder, and from that action, approved as above stated by the court, is this appeal.

This case is somewhat similar to the recent case of *Carroll* v. *Schneider, ante,* p. 538, 201 S. W. 2d 221, in that we are deciding a question which has become moot. In that case it was said: "It is urged, however, that the case is now moot, and should be dismissed for that reason. It is moot in the sense that we cannot now afford appellant petitioner any relief, but is not moot in the sense that it is important to decide a practical question of great public interest, which may arise in any future election." For the reason stated we there decided the question presented, although the case was moot, and for the same reason we now decide the question here involved.

This is not an election contest, nor was the case of *Carroll* v. *Schneider, supra.* It is a suit to compel the election commissioners to perform a ministerial duty which they failed to perform, when without hearing or determination of the legality of the ballots they refused to count them for "various reasons" which were not stated.

It has been many times held that mandamus is an appropriate remedy to require an officer to perform a duty purely ministerial. It does not lie to control the discretion of the officer, nor does it lie to correct an erroneous decision already made. But he may be directed to perform his duty and to do so in the manner required by law.

Here the commissioners had not certified the results of the election when the suit was filed, although they testified that they were ready and prepared to do so.

The request was made and denied that all the ballots which were at hand be examined in open court, and that the legal ballots be counted in the presence of the court. There may have been no authority for counting the ballots in the presence of the court, but there was full authority for requiring the commissioners to count and certify all the regular ballots cast by qualified electors. This they had not done and did not offer to do, as they asserted the right to pass upon questions other than that of the regularity of the ballots without a hearing and determination of the facts, and that action was approved by the court.

There being no challenge of any absentee ballot as contemplated by § 4795, Pope's Digest, the duties of the election commissioners were those merely of a canvassing board and were purely ministerial and these duties they neglected and refused to perform as required by law.

That the duties of canvassing boards are purely ministerial has been definitely and frequently decided by this court. *Howard* v. *McDiardmid*, 23 Ark. 100; *Patton* v. *Coates*, 41 Ark. 111; *Willeford* v. *State*, 43 Ark. 62; *Wheat* v. *Smith*, 50 Ark. 266, 7 S. W. 161; *Pitts* v. *Stuckert*, 111 Ark. 388, 163 S. W. 1173.

This is not a case where the validity of any absentee ballot has been challenged, which might have been done under the authority of § 4795, Pope's Digest, in which event the election commissioners would have had the power and authority of election judges to hear and determine the legality of the ballot challenged; but is a case where without challenge, the commissioners have for reasons largely undisclosed, but satisfactory to themselves, counted only a fourth of the absentee ballots. In the absence of a challenge the ballots should have been counted, if found regular, the duty of the commissioners in that circumstance being that of a canvassing board.

The time for filing an election contest is regulated by statute and the result of this opinion cannot extend, or enlarge the time for filing such contest. If this election

has not been contested, the decision of the question here presented would be moot, as it was in the Carroll case, except for the public interest and importance of declaring the correct practice to be followed in holding future elections.

Having jurisdiction to decide the question here presented, although no relief may inure to appellant, it is ordered that all costs be assessed against appellees.

McHANEY, ROBINS and MILLWEE, JJ., dissent.

ROBINS, J., dissenting. I respectfully dissent. In my opinion the lower court properly dismissed appellant's petition.

Mandamus is an extraordinary remedy and is never granted unless the party applying therefor has a clear right thereto and has no other adequate remedy in the premises. *Ex Parte Trapnall*, 6 Ark. 9, 42 Am. Dec. 676; *Basham* v. *Carroll*, 44 Ark. 284; *Cotton* v. *Steel*, 95 Ark. 623, 129 S. W. 1198; *Snapp* v. *Coffman*, 145 Ark. 1, 223 S. W. 360; *Jones* v. *Adkins*, 170 Ark. 298, 280 S. W. 389.

As I view the matter, appellant failed to show any right to mandamus, because he was, in effect, asking that the writ be used to control the discretion of the election commissioners.

The county clerk receives ballots of absentee voters, but does not count the ballots. He is required to turn them over to the election commissioners, who, under the provisions of § 4783, Pope's Digest, must open them and count them if they are "found regular." Who, under the statute, is vested with discretion, in the first instance, to say whether a given absentee ballot is regular and should be counted? Manifestly, only the election commissioners have this discretion and authority.

In the case at bar it was shown that they had exercised this discretion and had refused to include in their tabulation certain ballots which they found to be irregular. That this was done is shown by the testimony. Mr. Ledford, one of the commissioners, testified: "We re-

jected them [the ballots in dispute] for several reasons, some being illegal on their face, probably the affidavit not properly signed or made out. Others had not been signed. There are a number of reasons that those were rejected." Mr. Ledford and Mr. Ritchie, another member of the board, both testified that all votes had been canvassed and the board was ready to certify the result. This testimony is corroborated most convincingly by the fact that the official returns from this county, signed by all three election commissioners, now on file in the office of the Secretary of State, of which we take judicial notice, show the result in the sheriff's race, including votes in the absentee box, exactly as Ledford and Ritchie testified that they ascertained it to be.

It is apparent that the sole purpose of the petition for mandamus was to control the discretion of these election commissioners, acting, as to the absentee box, in the capacity of election judges, and to compel them to count ballots which they had found to be irregular and which they were not, under the plain letter of the law, required to count. Mandamus never lies to control discretion of a public official. *Rolfe* v. *Spybuck Drainage District No. 1*, 101 Ark. 29, 140 S. W. 988; *Robertson* v. *Derrick,* 113 Ark. 40, 166 S. W. 936; *Village Creek Drainage District* v. *Ivie,* 168 Ark. 523, 271 S. W. 4; *State ex rel.* v. *City of Marianna,* 183 Ark. 927, 39 S. W. 2d 301; *Watson* v. *Gattis,* 188 Ark. 376, 65 S. W. 2d 911; *Garland Power & Developing Company* v. *State Board of Railroad Incorporation,* 94 Ark. 422, 127 S. W. 454; *Miller* v. *Tatum,* 170 Ark. 152, 279 S. W. 1002; *Huie* v. *Barkman,* 179 Ark. 772, 18 S. W. 2d 334; *Democrat Printing & Lithographing Company* v. *Parker,* 192 Ark. 989, 96 S. W. 2d 16; *Jackson* v. *Collins,* 193 Ark. 737, 102 S. W. 2d 548; *Southern Cities Distributing Company* v. *Carter,* 44 S. W. 2d 362; *Satterfield* v. *Fewell,* 202 Ark. 67, 149 S. W. 2d 949; *Hardin* v. *Cassinelli,* 204 Ark. 1016, 166 S. W. 2d 258; *Better Way Life Insurance Company* v. *Graves,* 210 Ark. 13, 194 S. W. 2d 10.

In the case of *State ex rel.* v. *Deane,* 23 Fla. 121, 1 So. 698, 11 Am. St. Rep. 343, a candidate sought to compel election inspectors to count a certain ballot for him. The writ was denied, the court saying: "In this proceeding we cannot control their discretion or judgment or substitute ours for theirs."

A similar holding is to be found in the case of *Arberry* v. *Beavers,* 6 Tex. 457, 55 Am. Dec. 791.

Likewise, a mandamus against election inspectors was denied in the case of *People* v. *Hanes,* 44 Misc. 475, 90 N. Y. S. 61. There the court said: "In determining what ballots shall be counted for or against any candidate, . . . or what ballots shall be rejected, they act judicially. . . . The inspectors have performed the judicial act complained of. They may not have reached a correct conclusion, but they have acted and exercised their judgment, and the conclusion reached by them cannot be reviewed herein."

If the election commissioners failed to count any legal ballots in his favor, appellant had a complete, adequate and effective remedy, under the statute (§§ 4833 to 4838, Pope's Digest) providing for election contests, to right this alleged wrong. For that reason, if for no other, mandamus did not lie. In the annotation shown at p. 1259 of vol. 1912C, Ann. Cas., this appears: "Where a statute provides an adequate and complete remedy for the correction of errors or mistakes occurring in an election . . . by contest . . . , mandamus will not lie to compel canvassers of an election to recanvass the returns."

The impropriety of substituting the writ of mandamus for an election contest is forcibly shown in the instant case. In this case the successful candidate for sheriff—now duly certified and commissioned—was not made a party. Under the holding of the majority that election officials may be required to count votes which they, in the exercise of their discretion, have found to be invalid, it may occur that a candidate will be denied an office which

he has fairly won by illegal votes being counted for his adversary, in a court proceeding to which he is not a party. The inevitable effect of the majority opinion, as I see it, will be to complicate and confuse administration of our election laws.

I am authorized to state that Mr. Justice McHANEY and Mr. Justice MILLWEE concur in the views above expressed.