Alton CAMPBELL *v.* STATE of Arkansas

89-25                                    781 S.W.2d 14

Supreme Court of Arkansas
Opinion delivered December 11, 1989
[Rehearing denied January 29, 1990.]

*Martin Law Firm*, by: *Thomas A. Martin*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Alton Campbell appeals from an order of the circuit court removing him from the office of county Judge of Newton County. He contends the court erred by giving him insufficient notice of a final hearing and by ordering his removal on the basis of a federal court conviction before the decision became final. While this appeal was pending the issues have become moot.

Campbell was convicted in a United States district court on two counts of vote buying. He was sentenced to imprisonment for a term of three years and fined $5,000. The United States Court of Appeals for the Eighth Circuit stayed execution of Campbell's sentence pending appeal. During the course of the appeal the prosecutor for Newton County filed a petition to remove Campbell from the office of county judge, citing as authority, Ark. Const. art. 3, § 6, and art. 5, § 9, as well as Ark. Stat. Ann. §§ 12-2102, 43-2318, and 34-2201 through 2209. The cited statutes are now codified as Ark Code Ann. §§ 21-12-302, 16-90-112(b), and 16-118-105 (1987).

The circuit court held a hearing and entered an order on August 5, 1987, finding the action was premature and that it would be held in abeyance "until rendering of a final judgment by the Eighth Circuit Court of Appeals or other courts of proper jurisdiction." Thereafter, the United States Court of Appeals affirmed the conviction, denied rehearing, and its mandate was received by the United States District Court on July 22, 1988.

On July 27, 1988, Campbell was notified to attend a hearing in the Newton County Circuit Court the following day.[1] On October 5, 1988, that court entered its order declaring Campbell ineligible to hold public office.

On November 28, 1988, the United States Supreme Court denied Campbell's petition for certiorari. *United States* v. *Campbell*, ___ U.S. ___, 109 S. Ct. 490, 102 L.Ed.2d 527 (1988). Moreover, the records of the Arkansas Secretary of State, of which we take judicial notice, *Norris* v. *State*, 262 Ark. 188, 555

---

[1] This abbreviated scheduling appears to have been the result of a sudden docket change and the trial judge, assigned from another circuit, sought to take advantage of the unexpected opening on his calendar.

S.W.2d 560 (1977), show that Clinton Daniels was commissioned to serve as County Judge of Newton County, Arkansas, for the period, January 1, 1989, to December 31, 1990. The state's brief notes that this commission was the result of an election in which Campbell ran for the office of county judge and was defeated. That statement is not contested in Campbell's reply brief.

■    We have said we do not ordinarily decide issues which are moot. However, when the case involves the public interest, or tends to become moot before litigation can run its course, or a decision might avert future litigation, we have, with some regularity, refused to permit mootness to become the determinant. See *Cummings v. Washington County Election Commission*, 291 Ark. 354, 724 S.W.2d 489 (1987); *Robinson v. Shock*, 282 Ark. 262, 667 S.W.2d 956 (1984); *Arkansas Television Co. v. Tedder*, 281 Ark. 152, 669 S.W.2d 174 (1983); *Shiras v. Britt*, 267 Ark. 97, 589 S.W.2d 18 (1979); *Anderson v. State*, 266 Ark. 192, 583 S.W.2d 14 (1979); *Robinson v. Arkansas Game & Fish Commission*, 263 Ark. 462, 565 S.W.2d 433 (1978); *Commercial Printing Co. v. Lee*, 262 Ark. 87, 553 S.W.2d 270 (1977); *Dotson v. Ritchie*, 211 Ark. 789, 202 S.W.2d 603 (1947). In *Dotson*, Justice Frank G. Smith wrote on behalf of the majority.

> This case is somewhat similar to the recent case of *Carroll v. Schneider, ante*, p. 538, 201 S.W.2d 221, in that we are deciding a question which has become moot. In that case it was said: 'It is urged, however, that the case is now moot, and should be dismissed for that reason. It is moot in the sense that we cannot now afford appellant petitioner any relief, but is not moot in the sense that it is important to decide a practical question of great public interest, which may arise in any future election.' For the reason stated we there decided the question presented, although the case was moot, and for the same reason we now decide the question here involved.

*See also, Nebraska Press Association v. Stuart, Judge*, 477 U.S. 539 (1976); *Roe v. Wade*, 410 U.S. 113 (1972).

Here, the trial court determined that appellant had been convicted of a felony and was disqualified from holding public office in Arkansas. That ruling has not been shown to be

erroneous. *Dale* v. *Sutton*, 273 Ark. 396, 620 S.W.2d 293 (1981); *Poindexter* v. *Cole*, 239 Ark. 471, 389 S.W.2d 839 (1965).

■ We find no merit in Campbell's argument that he was denied due process in that he had less than twenty-four hours notice to appear before the Newton County Circuit Court prior to the order of removal. Although there was objection to the adequacy of the notice, when the trial court made direct inquiry as to whether the defense was prepared to proceed, counsel spurned any claim of inadequate preparation. We are not persuaded that the timing resulted in a denial of due process.

Article 5, § 9 provides that no person "hereafter convicted" of an infamous crime shall be capable of holding "any office of trust or profit in this state." Since our precedents constrain us to interpret language of the constitution according to its plain and common meaning, *Gipson* v. *Manor*, 225 Ark. 975, 287 S.W.2d 467 (1956); *Morley* v. *Remmel*, 215 Ark. 434, 221 S.W.2d 51 (1949), we deem it necessary to determine in what sense the framers of the Arkansas Constitution used the word "convicted" in this article.

Appellant relies on *May* v. *Edwards*, 258 Ark. 871, 529 S.W.2d 647 (1975), for the premise that a judgment of conviction must not be subject to reversal. But a number of factors distinguish this case from *May*. For one thing, *May* was challenging his removal from office, not by a court of law, but by the North Little Rock City Council, and this court noted that art. 5, § 9 was not self-executing and no enabling legislation existed. Too, in *May* the trial court had sustained a demurrer by summarily dismissing May's complaint against Edwards for usurpation of office. Since the complaint alleged that May's conviction had been reversed and the charges dismissed, this court was required to treat those allegations as true and, hence, a reversal was mandated.

Nor do we think the cases cited in *May* bind us to the position that one is "convicted" only when all avenues of recourse to the courts have been exhausted. The cited cases contain extenuating considerations. In *Owens* v. *State*, 86 Ark. 317, 111 S.W. 466 (1908), the trial court permitted a witness to testify over the appellant's objection that the witness had been convicted of grand larceny some years previously. This court rejected the argument,

noting that the judgment itself, entered on a plea of guilty, recited that the sentence "be withheld herein during good behavior of the defendant." In *Huddleston* v. *Craighead County*, 128 Ark. 287, 194 S.W.17 (1917), the prosecuting attorney was suing to recover his statutory fee for obtaining a felony conviction. Under applicable statutes the fee was payable "upon conviction," but the same statutes twice made reference to "such convict." Laying particular emphasis on the word "convict," the court held that the language of the statutes raised a doubt that any fee was payable before a *final* judgment was entered. In *Tucker* v. *State*, 248 Ark. 979, 455 S.W.2d 888 (1970), the appellant appealed from the denial of a new trial on his conviction of four counts of grand larceny. His contentions were based in part on the allegation that one of the jurors which found him guilty had been convicted of burglary and grand larceny some fourteen years earlier. Noting that the juror was not a "convicted felon" because the circuit court had suspended the sentence, we rejected the contention. In *Southerland* v. *Arkansas Department of Insurance*, 250 Ark. 903, 467 S.W.2d 724 (1971), this court interpreted the wording of an Arkansas statute providing that the license of an insurance agent was subject to revocation upon "conviction by final judgment of a felony involving moral turpitude." This court sustained Southerland's argument that although he had been convicted of embezzlement in California, because he had appealed, the judgment was not "final."

■ This court in *May* also relied on *State Medical Board* v. *Rodgers*, 190 Ark. 266, 79 S.W.2d 83 (1935), which we consider an aberration. The appellee, a practicing physician, was convicted in federal court of possession of counterfeit money and sentenced to three years imprisonment. The judgment on the sentence gave Dr. Rodgers two weeks in which to close his practice and prepare for imprisonment. That two weeks was then extended by four months and on the final day of the extension an order was entered placing the defendant on probation for a term of five years. The State Medical Board revoked Dr. Rodgers' license to practice medicine in Arkansas based upon his conviction of a crime involving moral turpitude as provided by its regulation. Rodgers appealed to the Pulaski County Circuit Court and the order of revocation was vacated. On appeal, this court affirmed, Justice Frank G. Smith dissenting. We think the

holding of this court in *Rodgers* cannot be reconciled with the law or with reason. Dr. Rodgers was undeniably guilty of a crime involving moral turpitude and was convicted and sentenced. On that basis his license to practice medicine was subject to forfeiture and the fact that the sentencing court, for reasons that are not apparent, recoiled from ordering execution of the sentence originally imposed, lessens neither the crime nor the conviction. We overrule the decision without hesitation.

We do not regard the foregoing cases as governing the outcome of the case now before us. If our constitution, for example, used the language "convicted by a *final* judgment," as in the *Southerland* case, or contained the word "convict" so as to suggest that actual incarceration was contemplated, as in *Huddleston*, or if the judgment failed to actually impose a sentence, as occurred in the *Owens* case, a different situation would be presented and a different result might be required. But those factors are not present, and there is no hint the framers meant conviction by a judgment which was in no sense subject to review.

Turning to other cases which interpret the use of the words "convicted" or "conviction," it is apparent that the more nearly the dates of the decisions coincide with the date of the constitution, the stronger the inference that by contemporary usage one was "convicted" of a crime when the trial was concluded and the judgment entered. "*Conviction* is the finding of a person guilty of an offense." *Hempstead County* v. *McCollum*, 58 Ark. 149, 24 S.W. 9 (1893). "Conviction is defined as that legal proceeding of record which ascertains the guilt of the party, and upon which the judgment or sentence is founded." *Fanning* v. *State*, 47 Ark. 442, 2 S.W. 70 (1886). "Conviction means after the verdict of the jury." *United States* v. *Hudson*, 65 F. 68 (W.D. of Ark. 1894). More recently, in *Barnes* v. *Cooper*, 204 Ark. 118, 161 S.W.2d 8 (1942), a unanimous court interpreted the word "convicted" (as used in Pope's Digest § 4397, disqualifying one who has been convicted of murder of benefitting from the estate of the victim) as follows: "We are of the opinion that the word 'convicted,' as used in the statute, means convicted and sentenced in a court of competent jurisdiction, the circuit court of the proper county."

Decisions from elsewhere are in accord: "In common parlance a person has been 'convicted' when he has been found guilty

by court or jury." *Martin* v. *Delaware*, 116 A.2d 685 (Del. 1955). In *Egan* v. *Jones*, 32 P. 929 (Nev. 1893), the Supreme Court of Nevada considered the word "convicted":

> Under our system of government, and the statute of this state and the constitutional provision referred to, "convicted" means when a person has been indicted by a grand jury, tried by a court and jury, and found guilty of the offense charged in the indictment; and it was the intention of the framers of the constitution that no person should be ousted from an office, when charged with the crime of bribery, until after such trial and conviction upon a verdict of guilty.

In *Martin* v. *State*, 234 P. 795 (Okla. Crim. App. 1925), the court stated that "the term 'conviction' in art. 6, § 10 of the Constitution, relating to pardons and paroles, denotes the final judgment of the trial court upon a plea of or verdict of guilty."

Several of the cases cited in *May* v. *Edwards, supra,* subscribe to the same usage of the word "conviction": *See Attorney General* v. *Montgomery,* 275 Mich. 504, 267 N.W. 550, 554 (1936); *State* v. *Levi,* 153 S.E. 587 (W.Va. 1930); *State* v. *Jurgensen,* 280 N.W. 886 (Neb. 1938):

> After verdict of guilty and sentence by trial court, the presumption of innocence ceases, and the law then presumes that the proceedings were regular and conviction just.

In *McKannay* v. *Horton*, 91 P. 598 (Cal. 1907), the court held that the right to hold public office was forfeited upon conviction of a felony, even though the judgment had been appealed. The court noted that the pendency of the appeal does not affect the presumption of guilt, which arises immediately upon the rendition of the verdict:

> It is said — arguendo — that an appeal to the Supreme Court operates a suspension of the judgment of the lower court for all purposes. This, as every lawyer knows, is not true. If, in a civil cause, the appellant does not file upon the judgment, execution will issue, notwithstanding the pendency of the appeal, and may be levied upon the property of the judgment debtor, and the property may be sold, and an

indefeasible title vested in the purchaser at the execution sale, notwithstanding the result of the appeal may be a complete and final reversal of the judgment of the trial court; and, as in civil cases, so in criminal cases, a judgment not final may be proved for every purpose for which it is effectual. It may be proved for the purpose of showing a vacancy in office, just as in a civil case it may be proved to justify the levy of an execution, or to establish the title of the purchaser at the execution sale; and this, even after it has been reversed on appeal.

■ In conclusion, we interpret art. 5, § 9 to mean that a public official becomes subject to removal when convicted by a plea of guilty or a verdict of guilty in circuit court of a crime defined by the article. Anything less, we believe, effectively nullifies the provision. We recognize the potential for harm to which this interpretation gives sufferance. However, the risk of harm to an individual must be balanced against the alternative — the loss of public confidence in those who govern which inevitably accompanies the spectacle of officeholders who have been found guilty of an offense which disqualifies them for public trust, yet continue to hold the office by resorting to the endless delays to which the criminal justice system is now susceptible.

Affirmed.

PURTLE, J., NEWBERN, J., and GLAZE, J., dissenting.

JOHN I. PURTLE, Justice, dissenting. The majority has again decided to dabble in some social legislation formerly considered prohibited by the separation of powers provisions of the federal and state constitutions. Moreover, the majority opinion ignores this court's precedent and establishes the law on this subject arbitrarily and without deliberation from a detached and neutral position. The majority opinion appears, however, to recognize the portents of possible future injustice in its candid admission: "We recognize the potential for harm to which this interpretation gives sufferance." It appears that the opinion has become the vehicle by which the majority vents its frustration with the criminal justice system in general.

My greatest fear concerning its opinion is that it will serve as an invitation for disgruntled politicians and well-meaning citi-

zens to proceed with haste to obtain the conviction of their opponents and unpopular officials. The election process is the proper and natural means of redress in such cases. On the other hand, the criminal justice system is the proper and necessary vehicle for bringing corrupt office-holders to the bar of justice. By these statements I do not mean to imply that a duly-convicted felon should not be removed from office.

In my opinion, we have not been granted any greater degree of knowledge or wisdom than our predecessors on this court who have ruled on this issue. I am not prepared to say that there is no basis for the earlier opinions of the Arkansas Supreme Court holding that a "conviction" used to oust a public official must be a "final" one. To read these opinions in any other way would, at least partially, deny the right of appeal to the person removed from office. I am not aware of large numbers of elected public officials presently serving in positions of trust while appealing felony convictions. The appellant is the only example that comes to mind.

This is not a judicial question—it is, rather, a legislative one. It certainly does not involve rules of procedure or other matters normally subject to the powers of the judiciary. Even if the correction of what we perceive to be a social ill were within our power, we should proceed, as we have failed to do in the present case, with greater deliberation.

Henceforth, timely notice of intention to remove a public official from office will apparently not be required, nor, evidently, will due process. The appellant was given less than 24 hours notice of the hearing to remove him from office. In such circumstances, why not allow the trial judge, or a municipal judge, or even a lawyer pulled off the street to immediately remove an officer who has been found guilty? This expeditious procedure would have the advantage of avoiding another hearing. Better still, why don't we proclaim a law providing that, upon conviction, the official shall automatically be removed from office? If that proves too cumbersome, we could decree that any public official arrested and charged with a felony shall at once be removed from office. After all, anyone who finds himself charged must surely be guilty.

A reasonable interpretation of Article 5, Section 9, of the Arkansas Constitution gives the word "final" the meaning our

predecessors have given it on many occasions. It would certainly be in keeping with the spirit of the law to interpret final judgment to mean exhaustion of the process of direct appeal—that is, when the appellate court affirms the conviction. Post-judgment motions and appeals would be rendered meaningless if we attach a literal construction to the word "conviction."

DAVID NEWBERN, Justice, dissenting. As the majority opinion points out, the trial court declined to consider removing Campbell from office "until rendering of a final judgment by the Eighth Circuit Court of Appeals or other courts of proper jurisdiction." Among the ways we can treat this appeal are the following: First, we can dismiss the appeal for mootness. Second, we can affirm the trial court's holding that the "conviction" formed the basis for ouster from office upon final judgment by an appellate court. Third, we can ignore the mootness of the issue and go far beyond the holding of the trial court stating a new rule of law not supported by our cases or even argued in the parties' briefs.

The majority has made the third choice. It is wrong in doing so for two reasons. This is not the sort of moot case which requires resolution in the public interest and because otherwise the issue might never be decided. The court has no business going beyond the issues presented by the trial court's judgment and the briefs of the parties.

## 1. Mootness

Ordinarily we do not decide cases that are moot. *Logan* v. *State*, 299 Ark. 550, 776 S.W.2d 327 (1989). Campbell contends we should decide this case even if it is moot because of the public interest in the outcome, as we did in *Cummings* v. *Washington County Election Comm.*, 291 Ark. 354, 724, S.W.2d 489 (1987). We chose to decide that case on its merits, despite its mootness, because it involved the qualifications of a candidate. The judicial process cannot run its course to finality when the issue is the qualifications of a candidate, and the election in question is immediately in prospect. We found it to be the type of case we should decide because otherwise the issue might never be decided, as every case in which it might arise would tend to be moot before a decision could be reached. This is not such a case. The

conviction of a public official of an offense for which he or she might be removed from office may come late or early in the term of office being served. There is nothing about the situation which would tend to make it moot in every instance.

In *Anderson* v. *State*, 266 Ark. 192, 583 S.W.2d 14 (1979), we chose to review a moot issue, pointing out that we made the choice because the matter was sufficiently important to warrant a decision on the merits. In that case, a county judge had been removed from office by a circuit court with no notice whatever. He was, in effect, invited by the court, and given six days, to prove he should *not* have been removed. We stated no reason for holding the matter was one "of sufficient importance" to rule on the merits despite mootness. Presumably it was done because of the egregious nature of the violation of the rights of the official who had been removed.

While the issue of when a conviction becomes final for purposes of deciding a collateral matter, such as removal from office, is an important one, this case does not present circumstances which should move us to decide it in the absence of an actual controversy.

### 2. Eclipsing the trial court

All judges suffer frustration with the delays which can occur in the criminal justice system. We should not, however, allow that frustration to overcome our usual judicious caution in deciding only that which is presented to us for decision.

The trial court followed our decision in *May* v. *Edwards*, 258 Ark. 871, 529 S.W.2d 647 (1975). In that case, we considered the collateral effect of conviction of a public official. An alderman had been replaced as a city council member after having been convicted of an offense. The alderman who had been ousted, and whose conviction had subsequently been reversed, brought suit, claiming the person who had replaced him was usurping his office. The trial court sustained a demurrer to his complaint. We reversed that part of the trial court's decision and held a cause of action had been stated. In doing so, we were required to decide whether the provision of Ark. Const. art. 5, § 9, that "No person hereafter convicted of . . . [an] infamous crime shall be . . . capable of holding any office or trust or profit in this State"

required the plaintiff's ouster from public office. Justice Fogleman wrote for the court:

> We have, on previous occasions, decided what constituted conviction of a felony insofar as enforcement of collateral effects [is] concerned. We have consistently held that, before such effects are enforced, the judgment must not only not be subject to reversal, but it must also have been carried into effect by actual imposition of sentence. See *Owen* v. *State*, 86 Ark. 317, 111 S.W. 466; *Huddleston* v. *Craighead County*, 128 Ark. 287, 194 S.W. 17; *State Medical Board* v. *Rogers*, 190 Ark. 266, 79 S.W.2d 83; *Tucker* v. *State*, 248 Ark. 979, 455 S.W.2d 888; *Sutherland* v. *Arkansas Department of Insurance*, 250 Ark. 903, 467 S.W.2d 724. There is no reason why the word "convicted" should be taken to mean something different, even if Art. 5 § 9 be taken to be self-executing, so that an incumbent must be ousted from office upon being found guilty of an infamous crime, without awaiting the final disposition of the case. A judicial definition of the word "convicted" different from any we have previously given it should not be the basis of the highly penal effect of removal of an incumbent when the legislature has not provided either for removal or suspension before the conviction has become final. Other jurisdictions have held that the word "convicted", in the same or a similar constitutional provision, is to be given the strict legal meaning we have accorded it in the cases above cited and not its popular meaning, so that a conviction must be based upon a final judgment not subject to review. *Summerour* v. *Cartrett*, [220 Ga. 31, 136 S.E.2d 724 (1964)] *supra*[;] *Commonwealth* v. *Reading*, 336 Pa. 165, 6 A.2d 776 (1939); *People* v. *Fabian*, 192 N.Y. 443, 85 N.E. 672, 18 LRA (ns) 684 (1908). Cases based upon constitutional provisions or statutes which expressly declare that an office becomes vacant when the holder is convicted of a felony or infamous crime, such as *State* v. *Sullivan*, 66 Ariz. 348, 188 P.2d 592; *McKannay* v. *Horton*, 151 Cal. 711, 91 P. 598; *State* v. *Jurgensen*, 135 Neb. 136, 280 N.W. 886; *re Obergfell*, 239 N.Y. 48, 145 N.E. 323; *State* v. *Vogel*, 65 N.D. 137, 256 N.W. 404; *State* v. *Levi*, 109 W.Va. 277, 153 S.E. 587;

*People* v. *Enlow*, 135 Col. 249, 310 P.2d 539; *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 38 N.E.2d 660; *Atty. Gen.* v. *Montgomery*, 275 Mich. 504, 267 N.W. 550 are neither controlling nor persuasive. We would have an entirely different situation if our constitutional provision so read or if we had such a statute.

The court's opinion attempts to get around *May* v. *Edwards* by remarking that Justice Fogleman noted there was no statute implementing the constitutional provision. The opinion neglects to mention, however, that there still is no such statute. That is no distinction whatever. The court also mentions that there were "extenuating circumstances" in *May* v. *Edwards*. No matter how the circumstances may have differed, there is no doubt the opinion laid out this court's interpretation of "conviction" as used in the constitutional provision based on facts which placed that question at issue. The court is now overruling *May* v. *Edwards* without saying it and doing so in a case where it is not only unnecessary but improper. If the court is determined to affirm the judgment in this admittedly moot case, the most it should say is that Campbell stood convicted under the law of this state because his conviction was not subject to further review and the possibility of reversal.

Would today's court have held the ousted alderman in *May* v. *Anderson* had been "convicted" and thus could not state a claim against an alleged usurper despite the reversal of his conviction? Will we someday have to hold, as the result of the decision the court makes today, that an elected official must give up his or her office despite our decision that a "conviction" must be reversed because of insufficiency of evidence to support it? Surely that cannot be the law. While the court's opinion recognizes "the potential for harm to which [its] interpretation gives sufferance," it does not say how we will deal with that harm. Will we just let it go for the sake of rigidity, or will we "distinguish" *Campbell* v. *State* by saying there were "extenuating circumstances" which required us to hold that a public official was subject to ouster despite the fact that his conviction was still subject to reversal? Not only are there no circumstances in this case which require such a decision, it was not even the decision of the trial court which we purport to affirm.

I respectfully dissent.

PURTLE and GLAZE, JJ., join this dissent.